513 So.2d 1126 (1987)
Donald ROGER
v.
The ESTATE OF Tad MOULTON, et al.
No. 86-C-2266.
Supreme Court of Louisiana.
May 18, 1987.
Rehearing Granted June 24, 1987.
On Rehearing October 19, 1987.
*1127 Mack Barham, Gail Nick, Barham & Churchill, Robert Keaty, Keaty & Keaty, for applicant.
Craig Marks, Jeansonne & Briney, Raymond Jackson, III, Allen, Gooch, Bourgeois, Gregory Moroux, Voorhies & Labb, for respondents.
COLE, Justice.
The primary issue in this case is whether or not there was a valid rejection of uninsured motorist (UM) coverage. The Court of Appeal found there was a valid rejection.[1] We reverse.
The automobile liability policy was issued by Liberty Mutual Insurance Company (Liberty Mutual) to United Parcel Service (UPS). The appellate court found relevant a letter written in 1981 which the trial court had ruled was inadmissible. It also determined the letter constituted a valid rejection of UM coverage in Louisiana, when considered in pari materia with the policy and a previous 1974 letter which was statutorily ineffective as a rejection. Our threshhold concern is the sufficiency of the 1981 letter to effect a rejection of the UM coverage.

FACTS
This case arises out of a vehicular collision which occurred along Highway 333 in Vermilion Parish during a rain storm. Liability is not now at issue and we recite only those facts necessary for an understanding of the procedural posture.
On the morning of July 3, 1981, plaintiff Donald Roger was traveling south on Louisiana Highway 333 in a truck owned by his *1128 employer, UPS. At this same time, Tad Moulton and three passengers were in an automobile proceeding north on Highway 333. The four were returning home after a two week tour of duty on an offshore oil rig. As these two vehicles entered a curve in the highway, Moulton swerved his vehicle across the double yellow line of the highway, striking the front left side of the UPS truck. Tad Moulton died at the scene from injuries sustained in the collision. Donald Roger was seriously injured.
A third vehicle, a pickup truck owned by Pierce Enterprises, Inc. (Pierce) and driven by its employee, Owen Schexnyder (Schexnyder), was also allegedly involved in the accident. Prior to the accident, Schexnyder, because of transmission failure, pulled onto the eastern shoulder of Highway 333 to attempt to effect repairs. Allegations were made that Moulton was forced to cross the highway's centerline by the position of the pickup truck on the shoulder.

PROCEDURAL HISTORY
Three separate law suits were filed as a result of this accident. Initially, Roger filed suit against the Estate of Tad Moulton; Frank R. Moulton, Jr., administrator; and Maryland Casualty Company (Maryland), insurer of the vehicle owned by Frank Moulton. Roger later added as defendants Global Marine, Inc. (Global), who was Tad Moulton's employer; Pierce, and its insurer, Maryland.
Liberty Mutual, in its capacity as workers' compensation carrier for UPS, filed a separate suit against the Estate of Tad Moulton, Frank R. Moulton, Jr., and Maryland as Moulton's insurer, seeking reimbursement for workers' compensation benefits and medical expenses paid to Roger. Added later to this suit as defendants were Pierce, its insurer Maryland, and Global.
These two actions were consolidated, with Liberty Mutual being designated by stipulation as intervenor in Roger's suit. Prior to trial, Roger settled his claims against the defendants named in his original suit and dismissed the suit with prejudice, reserving his right to proceed against Liberty Mutual as UM carrier for UPS.
Following this settlement, Roger filed a separate suit against Liberty Mutual in its capacity as UM carrier for UPS. He later added Liberty Mutual in this same capacity as a defendant in his original suit. His separate action against Liberty Mutual for UM benefits was also consolidated, and as consolidated, all three suits proceeded to trial.
After a four day trial of these consolidated suits, the trial court determined (1) the accident was caused solely by the negligence of Tad Moulton; (2) UPS had not rejected UM coverage in Louisiana, and therefore UM coverage was required to be provided in amounts equal to the liability limits of $200,000; (3) Roger had suffered $406,579.06 in damages; and, (4) Liberty Mutual was not entitled to recover from Maryland, Moulton's liability insurer, the workers' compensation benefits it paid to Roger.
The trial court allowed oral arguments on Liberty Mutual's motion for a new trial, but rejected Liberty Mutual's claim for reimbursement of Roger's compensation benefits out of his judgment against Liberty Mutual based upon the UM coverage. The trial court did, however, acknowledge Liberty Mutual's right as compensation carrier to sue itself.
Liberty Mutual both in its capacity as UM carrier and as workers' compensation carrier appealed. On original hearing the Court of Appeal affirmed in part and reversed in part. It affirmed the trial court's determination that the accident was solely the fault of Tad Moulton. It reversed the trial court's finding of UM coverage, holding UPS had validly rejected the coverage in Louisiana.

COURT OF APPEAL OPINION
In reaching its conclusion, the Court of Appeal first concluded:
The Liberty [Mutual] policy, although issued and delivered outside the State of Louisiana, provides coverage for UPS trucks and other vehicles located in Louisiana.... Under these circumstances... insofar as such policy applies to UPS *1129 motor vehicles registered and principally garaged in the State of Louisiana, such policy was "issued for delivery in this state" and therefore, the provisions of La.R.S. 22:1406D(1)(a) apply.
In finding La.R.S. 22:1406(D)(1)(a) did mandate UM coverage, the Court of Appeal distinguished Snider v. Murray, 461 So.2d 1051 (La.1985). After concluding our law required UM coverage be provided, the Court of Appeal then determined UPS had validly rejected UM coverage in Louisiana based on a combined reading of the policy and the two letters.
The first letter dated January 2, 1974 was an express rejection of UM coverage in Louisiana. It is undisputed this letter was never physically attached to the original policy issued in 1974, or any subsequent renewals. Accordingly, it alone could not operate as a valid rejection of UM coverage under Stroud v. Liberty Mutual Insurance Co., 429 So.2d 492 (La.App. 3d Cir.1983), writ denied, 437 So.2d 1147 (La.1983).
The second letter dated March 2, 1981 had been excluded from evidence in the trial court on the grounds of relevancy. The letter was allowed to be offered as a proffer of proof. In choosing to consider the 1981 letter, the Court of Appeal found, "The trial court clearly erred in disallowing this evidence." This letter in its entirety states:
In accordance with our standard procedure and instructions to Liberty Mutual please reject the Uninsured Motorist coverage in the state of Pennsylvania, effective March 1, 1981.
Since this is our standard practice, regarding Uninsured Motorists coverage in the event any other state changes their law or regulations to allow rejection of this coverage, please do so immediately on the earliest possible effective date.
Taking both letters into account, the Court of Appeal concluded:
Were it not for the letter of March 2, 1981, Stroud, supra, would dictate the result reached by the trial court. However, when the contents of this letter are considered together with the body of the other evidence presented, it is crystal clear that UPS validly rejected UM coverage under the 1981 policy.... (Emphasis added.)
On rehearing, the Court of Appeal reinstated its earlier opinion holding the 1981 letter was admissible and that there was a valid rejection of UM coverage by UPS. In addition, the court rejected arguments by Roger that the 1981 letter, standing alone, must be sufficient to reject UM coverage. The court reasoned:
Even if, arguendo, one would assume that the 1981 letter standing alone was insufficient to reject UM coverage, when the policy (which shows no UM coverage in Louisiana) and the two letters (1974 and 1981 documents) are considered in pari materia, the only conclusion which can be reached is that UPS validly rejected UM coverage in this state.
Roger applied for writs of certiorari and review asking us to consider the finding of a valid rejection of UM coverage. We granted writs on December 12, 1986. 498 So.2d 1 (La.1986).

VALIDITY OF REJECTION
Roger asserts initially the March 2, 1981 letter does not meet the statutory requisites for a valid rejection of UM coverage in Louisiana. He argues the Court of Appeal determination that the 1981 letter indicated a desire on the part of UPS to reject UM coverage in every state where possible is not sufficient, as their reliance on "intent" and "desire" to find such a rejection avoids the purpose and public policy behind requiring UM protection. He also urges this finding undermines the formal requirements of R.S. 22:1406(D)(1)(a).
The Louisiana UM statute, contained in R.S. 22:1406(D)(1)(a), provides the following:
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is *1130 provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981); Breaux v. Government Employees Ins. Co., 369 So.2d 1335 (La.1979). The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983); Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982). Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
To carry out this objective of providing reparation for those injured through no fault of their own, this Court has held the statute is to be liberally construed. Hoefly, supra. Thus, the requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected. A.I.U. Ins. Co., supra.
UM coverage is determined not only by contractual provisions, but also by applicable statutes. In the absence of a specific rule, general insurance law governs. A.I.U. Ins. Co., supra. The liberal construction given the UM statute requires the statutory exceptions to the coverage requirement be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Dorsey v. Board of Trustees, State Employees Group Benefits Program, 482 So.2d 735 (La.App. 1st Cir.1985), writ denied, 486 So.2d 735 (La.1986); Landry v. La. Hosp. Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984); Stewart v. La. Farm Bureau Mutual Ins. Co., 420 So.2d 1217 (La.App. 3d Cir.1982). In accordance with this strict construction requirement, the intermediate courts have held the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Cheadle v. Francois, 470 So.2d 255 (La.App. 4th Cir.1985); Aramburo v. Travelers Ins. Co., 426 So.2d 260 (La.App. 4th Cir.1983), writ denied, 433 So.2d 161 (La.1983).
In addressing Roger's contentions, we first note the question of whether or not R.S. 22:1406(D)(1)(a) mandates UM coverage in this instance. We agree with the Court of Appeal determination the holding in Snider, supra, does not control. In Snider we held R.S. 22:1406(D)(1)(a) should not be interpreted to require UM coverage, not otherwise provided, in a policy delivered elsewhere to insured vehicles registered and garaged elsewhere, simply because the named insured moved to Louisiana after issuance and during the term of the policy.
While Liberty Mutual's policy was neither delivered nor issued for delivery in this state, it did provide coverage for vehicles registered, garaged and licensed in Louisiana. Because of the vital interest *1131 Louisiana has in the application of the UM statute as a matter of public policy, we hold Liberty Mutual's policy, insofar as it applies to the vehicle in question, must provide UM coverage unless validly rejected.
Having found UM coverage is provided by the statute, we now consider whether or not the 1981 letter effected a valid rejection. Viewing this in light of the rules of construction which are accorded our UM statute, we conclude it did not. As stated in the case of Jordon v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981), writ denied, 409 So.2d 654 (La.1982):
[The] expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law. Under Louisiana law, uninsured motorist coverage is provided for by statute and embodies a strong public policy. 407 So.2d 503, 506.
In order to have a valid rejection, the rejection must be in writing, and signed by the "named insured" or his "legal representative." R.S. 22:1406(D)(1)(a). Cheadle, supra; Duhe v. Maryland Cas. Co., 434 So.2d 1193 (La.App. 1st Cir.1983). Though the 1981 letter obviously is a writing, it does not suffice as a rejection for other reasons.
The first paragraph of the 1981 letter is an obvious statement of UPS's rejection of UM coverage in Pennsylvania. The second paragraph, however, on which Liberty Mutual must rely cannot effect rejection of this coverage in Louisiana. It does not satisfy our formal requirements which must be met for exclusion of coverage. The language is prospective in nature. There were no changes in Louisiana law after March 2, 1981, the effective date of the letter, which would allow rejection of UM coverage in this state. Although changes to the UM statute were made in 1977, these amendments did not alter the substantive right to reject UM coverage. That right had existed previously. Rather, the amendment clarified the law as regards the form of rejection or selection of lower limits. For the first time the statute contained a requirement that a rejection or selection of lower limits must be in writing. A.I.U. Ins. Co., supra. Additionally, the document rejecting the coverage or selecting lower limits was presumed to be a part of the policy "irrespective of whether physically attached hereto." UPS could have rejected UM coverage in 1974 when the policy under consideration was first written and issued by Liberty Mutual. This being so, it is obvious the March 2, 1981 letter could not have pertained to Louisiana when it stated "in the event any other state changes their law ... to allow rejection..., please do so immediately on the earliest possible effective date." Such imprecise and prospective language falls far short of meeting the strict requirements of our law. Public policy, legislative intent, and strict statutory interpretation of exceptions to coverage, all require clear, unmistakable rejection. We do not find it in this instance.
Plaintiff also challenges the Court of Appeal's consideration of the 1974 letter in conjunction with the 1981 letter to find that "UPS ... desired to reject UM coverage in Louisiana." Essentially, the Court of Appeal allowed the insufficient 1981 rejection to ratify the ineffective 1974 rejection. It acknowledged the 1974 letter was ineffective because it was not attached to UPS' policy as required by law in effect at the time. Though ineffective, the court allowed the 1981 letter to ratify or breathe new life into the otherwise ineffective 1974 rejection. The court's "in pari materia" reading of these two documents in order to find a valid rejection resulted in error premised upon the "intent" of the insured.
A letter rejecting UM coverage in Louisiana written prior to September 9, 1977, the effective date of Act 438 of 1977, which did not comply with the existing formalities under La.R.S. 22:628 is totally void of any legal effect as a valid rejection of UM coverage in this state. Stroud, supra.
The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or *1132 the presence or absence of a premium charge or payment. Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2d Cir.1986). Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. This narrow reading of La.R.S. 22:1406(D)(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim of the negligent uninsured or underinsured motorist. Hoefly, supra. In the present case, only the letter written in 1981 may be considered to find a valid rejection of UM coverage by UPS. This letter simply was not an express rejection as required by law.
The plaintiff also attacks the validity of the 1981 letter as a rejection of UM coverage because it was not executed prior to the effective date of the policy and because it allegedly was not executed by an authorized legal representative of the insured corporation. In addition, Roger asserts the 1981 letter should have been ruled inadmissible. Having concluded that the 1981 letter was not an express rejection of UM coverage, we pretermit discussion of other assigned errors arguing against the letter's validity as a rejection and its admissibility.

PRESCRIPTION
We now consider the plea of prescription advanced by Liberty Mutual in its capacity as UM carrier for UPS. Liberty Mutual asserts even if UPS did not validly reject UM coverage, Roger's action for UM coverage prescribed because it was filed more than two years after the date of the accident in which the damage was sustained. La.R.S. 9:5629.
Roger was injured on July 3, 1981. Unless prescription was interrupted as to his UM claim by the filing of his original suit on June 19, 1982, or by Liberty Mutual's suit for recovery of compensation benefits filed July 2, 1982, his action for UM coverage prescribed on July 3, 1983. Roger maintains the filing of either of these suits was sufficient to interrupt prescription.
In order to fully appreciate and understand this issue, it is necessary to delineate the procedural steps leading to the trial. Roger instituted his initial suit against the Estate of Tad Moulton, Frank R. Moulton, Jr. (administrator of the estate) and Maryland Casualty Company (Maryland). This suit was filed timely on June 19, 1982, and bears docket number 82-44653-H of the Fifteenth Judicial District Court. Later amendments to the suit added Tad Moulton's employer, Global Marine, Inc. (Global), Pierce Enterprises, Inc. (Pierce) and its insurer, Maryland as defendants.
In the meantime, on July 2, 1982, in a separate suit, bearing docket number 82-44730-G, Liberty Mutual, the workers' compensation carrier for UPS, filed suit against the Succession of Thaddeus R. Moulton and Maryland for sums paid and to be paid to Roger for workers' compensation benefits. Through two supplemental and amended petitions, Liberty Mutual added Pierce, Pierce's insurer (Maryland), and Global as defendants.
By order of court dated April 7, 1983, suit No. 84-44730-G was consolidated with the earlier suit filed by Roger, and Liberty Mutual was designated as "intervenor" in the earlier suit.
On October 31, 1983, Roger settled his claims against the Estate of Thaddeus Moulton, Frank R. Moulton, Jr., Global Marine, and Maryland (Moulton's insurer). Accordingly, a "Restricted Motion and Order of Dismissal" was filed, releasing the above defendants, but expressly reserving relator's rights against any and all uninsured motorist carriers. Likewise, on December 14, 1983, Roger settled his claims against Pierce and its insurer, Maryland, and dismissed these defendants, expressly reserving his rights to proceed against Liberty Mutual as the uninsured motorist carrier of UPS.
*1133 Following Roger's dismissal of Pierce and Maryland, the claims remaining under docket number 82-44653-H consisted of Liberty Mutual's intervention for workers' compensation benefits against the Succession of Thaddeus Moulton, Maryland (Moulton's insurer), Pierce, Maryland (Pierce's insurer) and Global.
While these claims were pending, Roger filed a separate suit against Liberty Mutual in its capacity as uninsured motorist carrier for UPS seeking recovery of benefits under the uninsured motorists provisions of the UPS liability policy. This suit, filed January 17, 1984, bears docket number 84-47463-A of the Fifteenth Judicial District Court.
In February 1984, Roger also filed an Amended Petition in suit number 82-44653-H, adding Liberty Mutual as a defendant in that suit, and seeking recovery of uninsured motorists benefits.
UPS and Liberty Mutual subsequently intervened in suit number 84-47463-A, seeking subrogation to Roger's rights against Liberty Mutual as uninsured motorist carrier for UPS. (In effect, Liberty Mutual sued itself.)
On May 16, 1984, suit number 84-47463-A was consolidated with suit number 82-44653-H, and all three cases were eventually set for trial.
It is important to note as regards this trial and the procedural steps proceeding it, from the time of the plaintiff's original suit, the auto accident and the negligence of the driver, Tad Moulton, was always the underlying cause of action at issue and continued to be the major issue litigated by the remaining parties at the trial, including Liberty Mutual.
We have held a plaintiff's timely and properly filed law suit against a tort feasor interrupts prescription as to the uninsured motorist carrier. Hoefly, supra. Thus, even though Liberty Mutual was not named as a defendant in Roger's original suit, prescription as to the UM claim was interrupted.
As a general rule, if prescription is interrupted, time that has run prior to the interruption is not counted. Prescription commences to run anew from the last day of the interruption. La.Civ.Code art. 3466. An interruption of prescription resulting from the proper filing of a suit continues so long as the suit is pending. La.Civ.Code art. 3463.
Liberty Mutual, in support of its plea of prescription, points to the last sentence of art. 3463.
Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at the trial. La.Civ.Code art. 3463 (1982).
This phrase, formerly art. 3519, constitutes an exception to the general rules regarding interruption of prescription. Liberty Mutual argues art. 3463 serves to nullify the interruption of prescription effected by the filing of Roger's original suit because prior to trial, Roger had settled and voluntarily dismissed his claims against all defendants named in his original action.
In Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La.1982), we held La.Civ.Code art. 3519 (now art. 3463) does not apply after the defendant has made a general appearance, because after the defendant answers the trial court is vested with the discretion to dismiss the suit with prejudice. La.Code Civ.P. art. 1671. To maintain Liberty Mutual's plea of prescription, Roger must have voluntarily dismissed his claims prior to defendants making a general appearance.
In this instance, prior to dismissal, all original defendants had made general appearances by filing a pleading or other entry into the case. La.Code Civ.P. art. 7. Accordingly, the last sentence of art. 3463 does not apply.
In addition, Liberty Mutual's suit for compensation reimbursement against the Estate of Tad Moulton and others filed July 2, 1982 served to continuously interrupt prescription on Roger's claims arising out of the accident. In Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983), we answered *1134 a similar question certified to us by the United States Court of Appeal, Fifth Circuit, and said, "When an employer's compensation insurer files suit to recover compensation benefits paid to an injured employee and thereby interrupts prescription on the employee's claim arising from the same cause of action, prescription is continuously interrupted during the pendency of the insurer's suit." Louviere, supra, at 98. As we noted above, the cause of action in all three suits arose out of the same automobile accident and addressed the negligence of Tad Moulton.
Accordingly, under our holdings in Hebert and Louviere, supra, we find Roger's suit against Liberty Mutual as UM carrier for UPS to have been timely filed.

INTERVENOR
Liberty Mutual, intervenor, filed an original brief in this matter in its capacity as workers' compensation carrier for UPS. In brief, Liberty Mutual renews its claim to be reimbursed for compensation benefits it has paid to Donald Roger out of any judgment he obtains against Liberty Mutual as UM carrier for UPS. Liberty Mutual asks this court, in the event we reinstate the trial court's UM judgment, to remand for an evidentiary hearing to determine the precise amount of compensation reimbursement owed.
As compensation carrier, Liberty Mutual initially filed a separate suit for reimbursement. This suit was consolidated for trial with those suits filed by Roger. The trial court acknowledged Liberty Mutual's right to seek reimbursement from an employer's UM carrier, but rejected the claim under the express terms of Liberty Mutual's policy which provided, "Any amount payable under UNINSURED MOTORISTS INSURANCE shall not be reduced by any sums paid or payable under any workers' compensation law." The court also felt because the policy limits were far below the court's award, a reduction of plaintiff's award would impose the cost of compensation upon the employee.
The Court of Appeal, after concluding UPS had validly rejected UM coverage in Louisiana, found it unnecessary to consider Liberty Mutual's claim for reimbursement as it had been rendered moot.
We have recognized the right of an employer's workers' compensation carrier to seek reimbursement from UM coverage paid for by the employer. Johnson, supra. In Johnson we held that allowing the compensation carrier to be reimbursed for benefits paid to an employee from the employer's UM carrier does not violate the statutory rule prohibiting compensation reimbursement out of UM coverage purchased by the injured employee. Thus, if Liberty Mutual's claim for reimbursement is properly before us, remand might be required for proper determination of the amount of reimbursement owed.
In a Motion to Strike Brief and Memorandum in Support thereof filed on behalf of Roger, it is argued that Liberty Mutual, as compensation carrier, did not apply for certiorari and therefore its claim for reimbursement is not properly before this court. We agree with plaintiff.
It is the long standing policy of this court that a judgment will not be amended by this court to benefit a party who did not apply for certiorari. Seals v. Morris, 423 So.2d 652 (La.App. 1st Cir.1982). Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). The judgment of the Court of Appeal finding a valid rejection of UM coverage by UPS was clearly adverse to Liberty Mutual's claim for compensation reimbursement. When an adverse judgment is rendered by the Court of Appeal, that judgment becomes final unless timely application for certiorari is filed. La.Code Civ.P. art. 2166. Only Donald Roger applied for certiorari. Liberty Mutual as compensation carrier did not seek writs. Having failed to do so, the judgment of the Court of Appeal as to Liberty Mutual's claim for reimbursement is now final. Accordingly, we need not consider it.

DECREE
Accordingly, the judgment of the Court of Appeal is reversed and the judgment of *1135 the trial court is reinstated. Liberty Mutual is to bear all costs of court.
REVERSED.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
I consider that plaintiff's action against Liberty Mutual in its capacity as u/m carrier for UPS has prescribed. Plaintiff's original suit did not interrupt prescription under La.Civil Code art. 3463. Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La.1982), and Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983), are clearly distinguishable. In the present case, contrary to Hebert, Liberty Mutual was not a party defendant when plaintiff settled and voluntarily dismissed his action against the other defendants. Likewise, in the present case, contrary to Louviere, no timely suit was filed against Liberty Mutual. Having found that the action has prescribed, I do not reach the other issues raised in this matter. Accordingly, I respectfully dissent.

ON REHEARING
DENNIS, Justice.
On original hearing we held that Liberty Mutual and UPS cannot assert in this court claims for reimbursement of worker's compensation benefits paid to Donald Roger because they failed to apply for writs of certiorari following a court of appeal judgment disallowing their claims. After considering the oral and written arguments of counsel, we conclude that our original decision should be reaffirmed.
Liberty Mutual, the worker's compensation insurance carrier and the uninsured motorist insurance carrier for UPS, Roger's employer, became liable to Roger for both worker's compensation and uninsured motorist victim's benefits when Roger was injured in a work related vehicular accident caused by an underinsured tortfeasor. When Roger filed suit to recover from Liberty Mutual under the UM policy issued by it to UPS the insurer did not reconvene for reimbursement of worker's compensation previously paid to Roger. However, UPS and Liberty Mutual (as worker's compensation carrier) intervened in Roger's suit against Liberty Mutual (as UPS' UM carrier) seeking subrogation to Roger's rights against Liberty Mutual (as UM carrier) and other defendants to the extent of worker's compensation benefits previously paid. Over plaintiff's objection, Liberty Mutual's divided appearances as both plaintiff-intervenor and defendant were approved by the trial court, and no appeal was taken from the ruling.
After trial, the trial court rendered judgment for the plaintiff Roger against Liberty Mutual (as UM carrier), rejected the claim in intervention by UPS and Liberty Mutual (as worker's compensation carrier) for worker's compensation reimbursement, and awarded Roger damages. Liberty Mutual (as UM carrier) appealed suspensively, and UPS and Liberty Mutual (as UPS' worker's compensation carrier) appealed devolutively. The court of appeal partially reversed the trial court's judgment, holding that there was no UM coverage because of a rejection by UPS prior to the accident, but affirmed in other respects. Roger successfully applied to this court for a writ of certiorari or review, but UPS and Liberty Mutual did not apply.
On original hearing, this court concluded that the court of appeal erred in holding that UPS had rejected UM coverage and reinstated the trial court's judgment. The question presented now is whether Liberty Mutual is entitled to further proceedings in this court or below to have its demand for worker's compensation reimbursement enforced as either a claim or a defense.

1. Changing the Judgment Below
In appellate practice it is a general principle that a party may not seek to change the judgment below or any part thereof unless he has appealed or petitioned for review. Moore, Fed.Prac. 204.11[2]; R. Stern, E. Gressman & S. Shapiro, Supreme Court Practice, § 6.35; Am.Jur.2d, Appeal & Error, §§ 706, 707 and cases cited therein.
*1136 This is true whether a party seeks to revive a separate claim rejected by the court below, or to increase the amount awarded on the claim that is the subject of the appeal, or increase the scope of equitable relief, or seek incidental relief as to interest, attorney's fees, statutory penalties, or costs. Moore, supra at 204.11[3] n. 3-9. An argument which would modify the judgment below even in a way that provides less relief cannot be presented without filing an appeal or petition. R. Stern, E. Gressman & S. Shapiro, Supreme Court Practice, § 6.35. Cf. Federal Energy Administration v. Algonquin SNG, Inc., 426 U.S. 548, 560 n. 11, 96 S.Ct. 2295, 2302-03 n. 11, 49 L.Ed.2d 49 (1976). This principle applies equally to appeals and review by certiorari. Moore, supra at 204.11[2] n. 3-6.
This court, in D.H. Holmes v. Morris, 188 La. 431, 177 So. 417, 418 (1937) approved the basic concept by stating:
"When a writ of certiorari or review is granted at the instance of one of the parties to a suit, to consider a complaint of a judgment of the court of appeal, ... an opposing party to the suit who has not applied for a writ of review, cannot have the judgment amended for his benefit. In such cases the judgment of this court will be confined to the complaint or complaints of the party or parties at whose instance the writ of review was granted."
See Sinitiere v. Lavergne, 391 So.2d 821, 827 (La.1980); Carollo v. Wilson, 353 So.2d 249, 251 (La.1977); Gullota v. Cutshaw, 283 So.2d 482, 491 (La.1973); Jordan v. Travelers Insurance, Inc., 257 La. 995, 245 So.2d 151, 153 (1971).

2. Defending the Judgment Below
A party who is satisfied with a judgment, and who does not file a notice of appeal or a petition for review, is, nevertheless, a party to the appeal or review whose arguments must be heard, and in support of the judgment in his favor he may present any argument supported by the record, whether it was ignored, or flatly rejected, by the court below. This principle generally applies to all manner of review proceedings, although the discretionary nature of the grant of certiorari by a supreme court may make its application less certain in certiorari cases. Moore, supra at 204.11[2] n. 11-12. Cf. Louisiana cases describing our plenary power of certiorari review: Duffy v. Throwbridge, 335 So.2d 30, 33 (La.1976); Pringle-Associated Mortgage Corp. v. Cox, 258 La. 499, 246 So.2d 841, 842 (1971); Deposit Guaranty National Bank v. Shipp, 252 La. 745, 214 So.2d 129, 130 (1968); Reynolds v. Hardware Mutual Casualty Co., 249 La. 268, 186 So.2d 588, 589 (1966).
The classic statement of this principle appears in the opinion of Mr. Justice Brandeis, in United States v. American Railway Express Co., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924):
"[A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack on the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." 265 U.S. at 435, 44 S.Ct. at 564.
In other words, if a party seeks to raise issues that call for a change in the judgment below, he must file an appeal or petition, but if he merely makes alternative arguments in support of the judgment, he need not. Moore, supra at 204.11[3] n. 15; R. Stern, E. Gressman & S. Shapiro, supra at § 6.35; R. Stern, When to Cross-Appeal or Cross-PetitionCertainty or Confusion?; 87 Harv.L.Rev. 763 (1973).
Justice Tate, for this court, recognized and tacitly approved of this principle in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 153 n. 2 (1971).

*1137 3. Application of Principles to this Case
In this rehearing, Liberty Mutual and UPS argue that, despite their failure to apply for certiorari, they should be permitted to assert their interventions for reimbursement of paid worker's compensation either as claims or as affirmative defenses to reduce the amount of plaintiff's judgment. Applying the foregoing principles, however, we conclude that to do so would violate our rules of practice that (1) a party must apply for certiorari if he seeks to change the judgment below or any part thereof, and (2) a party may, despite his failure to petition for certiorari, defend a judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered, so long as it does not change the judgment.
The court of appeal judgment declared that there was no uninsured motorist coverage for the accident in question and necessarily rejected all claims dependent thereon. The grounds now urged by Liberty Mutual and UPS plainly call for changes in that decree by: (1) modifying the court of appeal judgment to declare the existence of UM coverage; (2) reviving and recognizing the validity of their claims for worker's compensation reimbursement out of the UM insurance funds; and (3) liquidating their claims and declaring Roger's judgment to be partially extinguished by compensation. Far from accepting the court of appeal judgment and arguing in support of it, the theories advanced by Liberty Mutual and UPS call for massive changes inconsistent with the result reached. Since neither of these parties filed an application for certiorari here seeking to alter or vacate the court of appeal judgments, their arguments cannot be entertained.
Superficially it may appear anomalous that a successful litigant in the court of appeal should be under any necessity of applying for certiorari here after a decree which brought him victory. But the judgment may, as here, be comprised of several elements, adverse as well as favorable. If the prevailing party wishes to rely alternatively in this court upon a contention rejected below which would change the court of appeal judgment, he must preserve his rights by an application for certiorari. In the absence of such preservation of the argument, the successful litigant must be taken to have regarded the grounds upon which he won as so strong that he is content to rely on them alone in the certiorari proceedings. See, e.g., Anthony v. Petroleum Helicopters, Inc., 693 F.2d 495, 498 n. 6 (5th Cir.1982). Although at times criticized, the rule that an appellee or a respondent may not attack the judgment below seems reasonable and desirable in order to prevent surprise and focus the attention of the court and the other party on the issues to be raised and, in the Supreme Court, to aid the court in evaluating whether the grant of certiorari is justified. See R. Stern, When to Cross-Appeal or Cross-PetitionCertainty or Confusion?; 87 Harv.L.Rev. 763 (1973); Note, 51 Harv.L.Rev. 1058 (1938).

Conclusion
For the reasons assigned, the original decision and opinion of this court are reaffirmed.
REAFFIRMED.
CALOGERO and LEMMON, JJ., dissent and assign reasons.
CALOGERO, Justice, dissenting.
The crux of the majority opinion, with which I am in disagreement, is contained in the following statement: "If the prevailing party wishes to rely alternatively in this Court upon a contention rejected below which would change the court of appeal judgment, he must reserve his rights by an application for certiorari." In my opinion that statement would be correct only if qualified in this respectif the prevailing party were to seek to change the court of appeal judgment so as to afford him greater relief than that which he was afforded by the court of appeal judgment.
In this case Liberty Mutual was satisfied with a judgment relieving them from liability as UM carrier, a judgment which mooted the question of Liberty Mutual's entitlement to a judgment respecting their intervention for worker's compensation, the latter *1138 being in essence a present claim for set-off.
There is no rule of law or procedure which would bar a successful party in the court of appeal from desisting from seeking writs and arguing in this Court for an affirmance of the court of appeal judgment, or in the alternative, for a reduction in any judgment in which they might be cast in this Court. That, of course, is exactly what happened in this case.
Pleadings are to be construed liberally and realistically. Liberty Mutual may have worn two hats but they had one pocket, for they were but one party. Pleased with exoneration on the $200,000 UM exposure by the court of appeal decision, and necessarily denied their compensation intervention (or in reality, set-off), they had no reason to appeal. Now cast as UM insurer, they are certainly entitled to argue that their obligation is not the full $200,000 UM policy limit but merely $152,922.98 in light of the alternative argument that they are entitled to a set-off with respect to their worker's compensation intervention in the sum of $47,077.02.
On the other hand, I am not prepared to say that in this case Liberty Mutual is entitled to reimbursement, for there is an independent legal issue not resolved in our opinion on original hearing nor in this opinion on rehearing. The trial judge in the first instance ruled that plaintiff's recovery should not be impaired or reduced by compensation intervention credit or set-off because of this Court's decision in Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982), and/or a provision of Liberty Mutual's UM policy which said, "Any amount payable under UNINSURED MOTORISTS INSURANCE shall not be reduced by any sums paid or payable under any workers' compensation law." It is not clear to me that the trial judge was right in this regard and our original opinion pretermitted the issue. Therefore, after determining that the issue is still aliveLiberty Mutual's right is not barred by their neglect to seek writsI would remand this case to the court of appeal for consideration of this issue.
For these reasons, I dissent.
LEMMON, Justice, dissenting.
Liberty Mutual, as worker's compensation insurer, mistakenly pleaded an affirmative defense of set-off by an incidental demand for reimbursement from itself (as UM carrier).[1] In view of the liberality of construction of pleadings mandated by La.C.C.P. art. 5051, this court should recognize the true nature of the pleading and rule that Liberty Mutual was not required to seek review of the intermediate court's judgment which did not reject Liberty Mutual's plea for set-off, but simply did not reach the issue (because nothing was owed by Liberty Mutual under the judgment).
NOTES
[1] 494 So.2d 1226 (La.App. 3d Cir.1986).
[1] In this unusual situation in which Liberty Mutual was both worker's compensation insurer and uninsured motorist insurer of plaintiff's employer, Liberty Mutual was really an obligor entitled to a set-off, rather than an obligee entitled to reimbursement.