BOWES, Judge.
Plaintiffs, Cheryl Ann and Daniel Kahn appeal a portion of a verdict and subsequent judgment which found that the insured, BESCO Exporting Corporation (employer of Daniel Kahn, hereinafter BESCO) intended to choose uninsured motorist coverage of less than the limits of bodily injury liability, and that the waiver form was clear and unambiguous. Intervenor-appellant, United States Fidelity and Guaranty Company (hereinafter USF & G), in its capacity as the worker’s compensation insurer of BESCO, also appealed that portion of the judgment which dismissed its claims as intervenor, for reimbursement of compensation paid to Mr. Kahn. USF & G further urges on appeal that a settlement entered into between Kahn and USF & G as the uninsured motorist carrier prior to trial should preclude Kahn from future compensation, including medical expenses.
*707 PROCEDURAL HISTORY
The pertinent facts are as follows. On June 2, 1986, Mr. Kahn was involved in an automobile accident with the defendant, Spring Dufrene. At the time of the accident, plaintiff was employed by BESCO and was en route back to the office in a company-owned vehicle after completing sales calls.
Plaintiff filed suit against Ms. Dufrene’s various insurers, including USF & G as the automobile liability/uninsured motorist insurer of the BESCO vehicle. (For purposes of clarity, the UM carrier will be referred to hereinafter as Fidelity and Guaranty Co. (or F & G) so as to distinguish USF & G in this capacity from USF & G in its capacity as the carrier of workmen’s compensation). Several months later, USF & G as the worker’s compensation insurer, filed a petition of intervention for reimbursement of compensation payments against all parties except F & G. On January 12, 1989, F & G tendered payment to Kahn, under its UM policy, in the amount of $30,000.00, and subsequently filed a motion for summary judgment seeking to have the trial court declare its limits under the UM policy to be $30,000.00. The motion was denied and the case ultimately proceeded to trial against Ms. Dufrene, her insurer, Old Hickory Casualty Insurance Company, USF & G and F & G.
It was stipulated at trial that F & G had made the $30,000.00 tender; it was further stipulated that USF & G had paid $24,526.79 in compensation benefits by the time of the trial. Following trial, the jury concluded that Ms. Dufrene was not at fault, but that the accident was caused by an unknown third party who was assigned 100% of the fault. Damages were assessed in favor of Mr. Kahn in the amount of $75,000.00 for mental and physical pain and suffering, past and future, $40,000.00 for past lost wages, $25,000.00 for past medical expenses, and $7,500.00 for future medical expenses. No future lost wages were awarded. The jury also concluded that Mrs. Kahn suffered a loss of consortium and assessed damages in the amount of $10,000.00 in her favor. The jury found, too, that the UM waiver in question was clear and unambiguous.
A judgment was subsequently issued which incorporated the jury’s finding and the stipulations. As a result, the trial court found that the limits of the UM policy were $30,000.00 and that USF & G was entitled to a credit for the tender previously paid, provided that plaintiffs were entitled to legal interest from the date of judicial demand. Plaintiffs’ claims against Ms. Dufrene, Old Hickory, USF & G and F & G were dismissed. The intervention of USF & G was also dismissed.
ISSUES
On appeal, plaintiffs urge that the UM waiver form in question was ambiguous and, as a result, the waiver is inoperative. Therefore, plaintiffs argue that the UM coverage is equal to the liability policy limits of $500,000.00. USF & G also appealed, urging that it was error to dismiss its claim for intervention since F & G tendered, and Mr. Kahn accepted, the $30,000.00 offer without approval of USF & G as required under LSA-R.S. 23:1102(B).[1]
*708 Therefore, USF & G argues that under that statute, F & G must reimburse the amount paid by the compensation insurer to the plaintiff, and that Mr. Kahn has forfeited his right to future compensation.
DISCUSSION
At trial, Mr. Sully Kahn, secretary/treasurer of BESCO and the father of plaintiff, testified that he received a UM waiver form in April, 1984, some seven months after the effective date of the USF & G liability policy (this policy covered the period of September 18, 1983 through September 18, 1984). When he received the form, there was an “X” already typed in the box next to the term which rejected UM coverage in its entirety. Kahn did not place the “X” himself. He did not scratch out the “X”, but, instead, filled in Section C which read: “Selected and accepted Uninsured Motorist coverage with limits of liability of _” In that section, Kahn filled out “$10,000 each person/$10,000 each accident,” and signed the form.
At some point, at least one copy of the form appeared to have had the “X” scratched out, but it was never established when or where or by whom that “scratch out” mark may have been made. Kahn never completed any further waiver forms in connection with the USF & G policy for BESCO, although the policies were renewed successively for several years, encompassing the time. of the accident in question.
William David, the insurance agent who placed the USF & G policy with BESCO, testified that he did not deliver nor discuss the waiver form with Sully Kahn, but he corroborated his (Kahn’s) testimony that the waiver form did have the “X” typed on it before it was sent to BESCO. The 1983/84 policy showed UM limits of $10,000. However, due to a directive sent from the underwriting department at USF & G regarding interpretation of Louisiana law, USF & G, without consulting BESCO, Kahn, or the insurance agent, unilaterally increased the UM benefits of this policy to $30,000. Therefore, the policy as it was issued for 1985-1986 evidenced UM coverage of $30,000. Neither Kahn nor any representative from BESCO ever executed another UM waiver form with USF & G other than thé initial one of April, 1984, and none were attached to the renewal policies.
The interrogatories propounded to the jury had but one reference to the UM waiver:
“Is the document executed by Mr. Sully Kahn for “Besco” [sic] regarding uninsured motorist coverage clear and unambiguous?”, to which the jury responded “Yes.” In its subsequent judgment, the trial court stated that the jury concluded “that the uninsured motorist limits waiver form used by United States Fidelity & Guaranty Company to evidence an intent to select lower uninsured/underinsured motorist limits executed by Sally [sic] Kahn, the secretary/treasurer of Besco [sic] Exporting Corporation was clear and unambiguous.”
We do not have to determine whether this finding by the jury is manifestly erroneous because we agree with our brothers in the 1st and 3rd Circuits that whether or not a contract is ambiguous is a question of law. Aycock v. Allied Enterprises, Inc., 517 So.2d 303 (La.App. 1 Cir.1987); Boudreaux v. Verret, 422 So.2d 1167 (La.App. 3 Cir.1982). Questions of law are exclusively for the court, while questions of fact are for the jury. While the jury might have found that BESCO intended to select lower limits (which they did not), a function within its province, such finding is not pertinent to our present inquiry. However, for the following reasons, *709 we do find that the conclusion of the trial judge to the same effect as the jury (i.e., that the UM waiver form was “clear and unambiguous”) is manifestly erroneous as a matter of law.
Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987) involved a letter offered as a waiver of UM coverage. The letter was dated March, 1981 (the document in the case sub judice was received in 1984). There our Supreme Court found that the letter was not an express “precise” rejection of coverage and stated:
“The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. * * * Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is in sufficient to effect a valid rejection. This narrow reading of La.R.S. 22:1406(D)(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim of the negligent uninsured or underinsured motorist.” [Emphasis added]
Therefore, it is clear that Louisiana law is the source of the obligation of providing uninsured motorist coverage, and not policy language or intent of the parties. Rejection or reduction of UM coverage can only be effective when made in the narrow manner according to LSA-R.S. 22:1406(D)(1)(a), as narrowly construed by the Louisiana Supreme Court in Roger, supra, and, consequently, the intent of the parties, even when imprecisely reduced to writing, is not binding.
We must, therefore, look only to the four corners of the writing, purported to be a waiver, to determine if such is clear and unambiguous as a matter of law. Roger, supra and Wilson v. Cost + Plus of Vivian, Inc., 375 So.2d 683 (La.App. 2 Cir.1979). The document produced at trial appeared as follows:
*710 [[Image here]]
The document is undated. There are no other forms relative to waiver of UM coverage in connection with this, or the renewal policies.
*711 In our opinion, the waiver form appears patently ambiguous on its face, with two mutually exclusive options apparently selected and the questions of if, when, and who scratched through the “X” on one of the copies having never been answered. It would seem self evident to us that an insurance form which purports to reject UM coverage in its entirety and, at the same time, select coverage with stated limits, is certainly not clear and unambiguous. With regard to insurance contracts:
“All ambiguity is to be construed in favor of the insured. Borden, Inc. v. Howard Trucking Co., 454 So.2d 1081 (La.1983) (on rehearing). With respect to an exclusionary clause the contract must be interpreted liberally in favor of coverage. Borden, 454 So.2d at 1089. The terms of an exclusion must be clear and unmistakable. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987).”
Kitchens v. Brown, 545 So.2d 1310 (La.App. 1 Cir.1989).
Because we find that the terms of the waiver are patently ambiguous, we must conclude that the waiver was ineffective under La.R.S. 22:1406(D)(1)(a) and the above quoted jurisprudence, and we are bound, under the statute (as construed by the jurisprudence), to decide that UM coverage in this case is equal to the liability limits of the policy, i.e., $500,000.00.
This case is distinguishable from Badeaux v. Cook, 537 So.2d 725 (La.App. 5 Cir.1988) and McBroom v. Boudreaux, 582 So.2d 1002 (La.App. 5 Cir., 1991) an unpublished opinion, which applied the law as it stood prior to the 1987 amendment; there, the statute merely required that a waiver be in writing, signed by the named insured, and clearly evidence' a selection of lower limits. However, even under the prior law, the waiver had to be clear and unambiguous, and, in the present case, we have found that this is not so.
USF & G, the compensation carrier, validly and timely intervened in the law suit and, under LSA-R.S. 23:1101, it is entitled to recover the amount of compensation paid to plaintiff. This amount was stipulated to be $24,756.79. Since there is more than enough available under the UM policy limits, as decided above, to satisfy the jury award, as well as to reimburse the compensation carrier, the issue of whether plaintiff forfeited his right to future compensation appears to be moot.
Furthermore, we do not consider that question as ripe for review on appeal, since it has never previously been raised by pleading or argument in the district court. We are constrained to note, However, that the argument made by USF & G that it was not notified, nor did it consent to the “settlement,” is an apparent attempt at circumvention since it, the very same company which made the offer, must be assumed to have not only been on notice of it, but to have consented to it as well. To construe LSA-R.S. 23:1102 so as to deprive the plaintiff of future compensation in the present case furthers none of the purposes of the legislative will as expressed in the Acts.
DECREE
For the foregoing reasons, the judgment of April 26, 1990, is reversed, in part, to reflect that the UM waiver is ambiguous and therefore without effect; and that, therefore, the UM limits are equal to the liability limits of the policy in the amount of $500,000.00.
That portion of the judgment dismissing the claims of plaintiffs and USF & G as the compensation carrier is also reversed, and judgment shall be entered in favor of plaintiffs and against F & G (USF & G as the UM insurer) for all amounts awarded by the jury, subject to a credit in the sum of $30,000 previously paid, plus legal interest from date of judicial demand, and judgment in favor of USF & G as the compensation carrier and against F & G for $24,-765.79, plus interest from the date of judicial demand.
All other portions of the judgment are affirmed, except that all costs of the litigation in the district court are assessed against USF & G as the uninsured motorist carrier. Costs of this appeal are also assessed against USF & G as the uninsured motorist carrier.
*712 AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. LSA-R.S. 23:1102(B) reads as follows:
B. If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or the insurer received a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent’s right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the *708 employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.