STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-31

GRACE R. HARPER, ET AL.

VERSUS

DIRECT GENERAL INSURANCE
COMPANY OF LOUISIANA, ET AL.

**********

ON REMAND FROM THE LOUISIANA SUPREME COURT
WRIT APPLICATION FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 218,464-D
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

**WRIT DENIED.**


Cory P. Roy
Beau R. Layfield
107 North Washington Street
P.O. Box 544
Marksville, LA 71351
Counsel for Cross-Claim Plaintiff-Respondent:
      Billy Joe Ansiel, Jr.

John David Ziober
Brad M. Boudreaux
320 Somerulos Street
Baton Rouge, LA 70802
Counsel for Defendant-Relator:
      Liberty Mutual Insurance Company

**PAINTER, Judge.**

Defendant-Relator, Liberty Mutual Insurance Company ("Liberty Mutual"), sought supervisory writs from this court after the district court denied its motion for summary judgment, alleging that there was no uninsured/underinsured motorist ("UM/UIM") coverage for the subject accident since such coverage was properly rejected by a legal representative of the insured, Sears, Roebuck and Co. ("Sears"). This court initially denied the writ application in an unpublished opinion, *Harper v. Direct General Ins. Co.*, 08-31 (La.App. 3 Cir. 3/4/08), and found no error in the trial court's ruling. Liberty Mutual filed an application for supervisory and/or remedial writs with the Louisiana Supreme Court, which granted the application and remanded the matter to this court with instructions to hear the case and render a full opinion. *Harper v. Direct General Ins. Co.*, 08-738 (La. 6/6/08), 983 So.2d 907. We have complied with the supreme court's instructions, and, for the reasons that follow, we reaffirm our decision denying Liberty Mutual's supervisory writ application.

**FACTUAL AND PROCEDURAL BACKGROUND**

This litigation arises from an automobile accident that occurred on April 28, 2004, in Rapides Parish. A vehicle driven by Lanika Hughes, in which Grace Harper ("Harper"), the original Plaintiff, was a passenger collided with a vehicle owned by Sears which was being driven by Billy Joe Ansiel, Jr. ("Ansiel"). Harper filed suit, individually, and on behalf of her minor children, against Hughes and her insurer, Direct General, as well as against Ansiel and Sears. Ansiel filed a cross claim against Hughes, Direct General, and Liberty Mutual as the insurer of Sears. Harper's claims have since been dismissed. The only remaining issue involves Ansiel's cross claim against Liberty Mutual for UM/UIM coverage.

1

Liberty Mutual filed a motion for summary judgment seeking to have Ansiel's cross claim dismissed based on its contention that there is no UM/UIM coverage under the Business Auto Policy issued to Sears because such coverage was properly rejected by a legal representative of Sears on April 16, 2004, before the subject accident. In this case, the rejection form contained the typed name and address of Sears in the blank for the named insured. In the blank for the signature of a named insured or legal representative, an illegible signature appears. Liberty Mutual filed the affidavit of Laurence Jenchel ("Jenchel") which purports to identify the completed rejection form as a true copy of the original and which purports to establish that Jenchel is the authorized representative of Sears who filled out and signed the rejection form. The trial court denied Liberty Mutual's motion for summary judgment and found that the form for rejection of UM/UIM coverage used by Liberty Mutual in this case did "not comply with the strict rules governing rejection of uninsured motorist coverage." Specifically, the trial court found that an unidentified signature is insufficient to clearly and unmistakably reject UM/UIM coverage and that a printed name must identify the signatory in order to clearly and unmistakable reject UM/UIM coverage.

As previously stated, we denied the writ and found no error in the trial court's denial of Liberty Mutual's motion for summary judgment. The Louisiana Supreme Court subsequently granted Liberty Mutual's application for supervisory and/or remedial writs. This matter has now been briefed and argued pursuant to the supreme court's instruction, and, for the following reasons, we now reach the same result.

2

Liberty Mutual contends that the trial court erred in denying its motion for summary judgment seeking dismissal of Ansiel's claims for UM/UIM coverage as there is no genuine issue of material fact because UM/UIM coverage was properly rejected. We review this matter de novo as that is the standard of review for the grant or denial of a motion for summary judgment. *See Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991).

Louisiana Revised Statutes 22:680(1)(a)(ii) provides as follows:

> Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

As previously stated, the trial court found that the rejection form did not comply with the strict rules governing rejection of UM/UIM coverage because no

printed name of the signatory appeared on the form. In fact, we recognize that it was impossible to tell, from the face of the rejection form itself, who was signing on behalf of Sears.

The Louisiana Supreme Court, in *Duncan v. U.S.A.A. Ins. Co.*, 06-363, pp. 11-12 (La. 11/29/06), 950 So.2d 544, 551, noted the following tasks that must be completed for UM/UIM coverage to be validly rejected:

(1)    initialing the selection or rejection of coverage chosen;
(2)    if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident;
(3)    printing the name of the named insured or legal representative;
(4)    signing the name of the named insured or legal representative;
(5)    filling in the policy number;  and
(6)    filling in the date.

The two elements at issue in this case are numbers three and four. On the form at issue, in the blank for the named insured, Sears' name and address are typed. In the blank for the signature of a named insured or legal representative, an illegible signature appears. In its written reasons for judgment, the trial court stated, in pertinent part:

> The UM Coverage Form requires both a printed and signed name to clearly identify the insured party rejecting UM coverage. Discussing these requirements, the Supreme Court stated, "the insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature." *Duncan*, 950 So.2d at 551. In this case, the signature on the UM coverage form is not identified. No writing on the form identifies the signatory in printed text. No writing identifies the signatory's capacity as it relates to the printed name "Sears, Roebuck and Company." This Court finds that a printed name must identify the signatory in order to clearly and unmistakable reject UM coverage.

Liberty Mutual contends that there is no statutory or jurisprudential authority to support the trial court's position. It is the position of Liberty Mutual that there is no requirement that the legal representative show his capacity or authority on the

4

form or that the name of the legal representative be printed on the form. Liberty Mutual further contends that all six of the factors set out in *Duncan* were met on the rejection form at issue such that a proper rejection of UM/UIM coverage was effected. Liberty Mutual relies on *Odom v. Johnson*, 97-546 (La.App. 3 Cir. 12/10/97), 704 So.2d 1254, *writs denied*, 98-788 (La. 5/1/98), 718 So.2d 419, 98-826 (La. 5/1/98), 718 So.2d 420, and 98-876 (La. 5/1/98), 718 So.2d 421, for the proposition that a legal representative is not required to identify his capacity or print his name on the form so long as he has authority to execute the form. In *Odom*, the defendants were a husband and wife who were the only shareholders of the insured corporation. The wife wrote her husband's initials next to the rejection box and signed his name and wrote the corporation's name above the signature line on the form. This court, in *Odom*, 704 So.2d at 1263, found that the UM/UIM coverage rejection was valid and stated that:

> A corporation's authorized agent may execute a UM rejection form without the necessity of a corporate resolution evidencing such authority. *Delaune v. State Farm Mut. Auto. Ins. Co.*, 529 So.2d 1289 (La.App. 3 Cir.1988). We conclude that Rebecca had the requisite authority to reject UM coverage on behalf of the corporation. She intended to do so and, in fact, did reject UM coverage by signing the form, "Carl R. Martin, CR & B Contractors." The fact that she signed Carl's name instead of her own is of no moment since she was signing on behalf of the corporation and had the authority to do so.

On the other hand, Ansiel relies on *Cohn v. State Farm Mutual Automobile Insurance Co.*, 03-2820 (La.App. 1 Cir. 2/11/05), 895 So.2d 600, *writ denied*, 05-1000 (La. 06/17/05), 904 So.2d 705, which was cited with approval by the supreme court in *Duncan*, for the proposition that the failure to comply with the formal requirements of the statute will render the waiver of coverage invalid. In *Cohn*, the first circuit found the UM rejection invalid because the form did not include a

complete policy number (and the insured had multiple policies with the insurer), the insurance company was not named, and the signatory did not indicate that she was signing in a representative capacity. These deficiencies rendered the rejection as not "clear and unmistakable." Ansiel argues that, in this case, the form is invalid because the signature does not indicate that the individual was signing in a representative capacity, that the signature is invalid, and that Liberty Mutual cannot rely on parol evidence to repair the deficiencies.

We find *Odom* distinguishable and agree with the first circuit's statement in *Cohn*, 895 So.2d at 602 that:

> Considering that the object of the UM legislation is to promote full recovery for automobile accident victims by making such coverage available for them, jurisprudence has held that the UM statute is to be liberally construed, and the exceptions to coverage interpreted strictly. Therefore, any exclusion from coverage must be clear and unmistakable. *Dixon v. Gene Moody Trucking, Inc.*, 36,420 pp. 5-6 (La.App. 2 Cir. 10/23/02), 830 So.2d 392, 395. The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law. *Roger v. Estate of Moulton*, 513 So.2d 1126, 1131 (La.1987).

Furthermore, in *Duncan*, 950 So.2d at 552 (emphasis added), the supreme court specifically stated:

> The commissioner of insurance, in drafting the form, requires six tasks, all of which we find to be pertinent in rejecting UM coverage. The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. **The insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature**. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to. Thus, the policy number is relevant to the determination of whether the insured waived UM coverage for the particular policy at issue.

6

Thus, we agree with the trial court in its written reasons stating (emphasis added):

> Liberty Mutual argues that an insured corporation must always sign the requisite form in a representative capacity, and therefore, the signature is sufficient. Essentially, Liberty Mutual agues that a reader of the UM Coverage Form should assume that the signatory is a legal representative of the company printed above. Since exceptions to UM coverage are interpreted strictly, the Court is not persuaded by an argument that requires such an assumption. Next, Liberty Mutual introduces an affidavit to identify the signatory as a representative of Sears with capacity to reject UM coverage. However, this additional documentation is insufficient to meed Louisiana's strict form requirements. "**The insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued by the insurer**." *Duncan*, 950 So.2d at 547. The Supreme Court has rejected attempts by an insured party to add or amend the UM Coverage Form retroactively.

In this case, Jenchel, the alleged legal representative of Sears, only signed his name (and, said signature was illegible) and failed to print his name on the rejection form to identify his signature as specifically required by *Duncan*. After our de novo review, and given the required strict interpretation of the statutory exceptions to UM coverage, we find, as did the trial court, that the rejection at issue was not "clear and unmistakable." Thus, we find no error in the trial court's denial of Liberty Mutual's motion for summary judgment.

## DECREE

For the foregoing reasons, we deny Liberty Mutual's application for supervisory writs. We assess all costs of this supervisory writ to Relator-Liberty Mutual.

**WRIT DENIED.**