652 So.2d 670 (1995)
Juanita H. PARTIN, et al.
v.
Marjorie V. DOLBY, et al.
No. 94 CW 1418.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
Michael C. Palmintier, Baton Rouge, for Juanita H. Partin, et al.
Donald R. Smith, Baton Rouge, for Allstate Ins. Co.
Before GONZALES and PARRO, JJ., and REDMANN, J. Pro Tem.[1]
*671 GONZALES, Judge.
A writ of certiorari was granted herein to address a trial court ruling denying a motion for summary judgment.

FACTS
On August 10, 1988, plaintiff, Juanita Partin, a Louisiana citizen residing in Delaware, was driving a vehicle which was owned by Freddie A. Sobers, a Louisiana resident, and which was registered in Louisiana. Partin was rear-ended by a vehicle owned and driven by defendant, Marjorie V. Dolby, a Delaware resident. The accident occurred in Glasgow, Delaware. Prior to the accident, Partin and her husband, Charles, had worked in Georgia, and while living there, had purchased automobile insurance on their own Louisiana-registered vehicle. Allstate Insurance Company (Allstate) issued the policy to the Partins in Georgia and the policy lists Waynesboro, Georgia as the Partins' address.
On August 10, 1990, the Partins filed this action for damages in Louisiana.[2] The petition alleged that, as a result of the accident, Juanita Partin sustained severe personal injuries and residual disabilities for which she would require extensive medical care and that Charles Partin suffered damages for loss of consortium. The petition named the following defendants: Marjorie V. Dolby; State Farm Mutual Automobile Insurance Company (State Farm) as Dolby's automobile liability insurer; Sentry Insurance A Mutual Company (Sentry) as Sobers' automobile liability insurer; and Allstate as the Partins' uninsured motorist insurer.[3]
On July 29, 1991, the Partins settled with Dolby and State Farm for $100,000.00, the limit of the State Farm policy. On March 30, 1992, settlement was also reached with Sentry for $100,000.00, the limit of its uninsured motorist coverage on Sobers' vehicle. The Partins maintained the suit against Allstate on the issue of uninsured motorist coverage.
On February 22, 1994, Allstate filed a motion for summary judgment, contending that plaintiffs were not entitled to coverage under the Allstate policy because Dolby did not qualify as an "uninsured motorist" under the terms of the policy and under applicable Georgia law (where the policy was issued) or Delaware law (where the accident occurred).
On May 31, 1994, the trial court denied Allstate's motion for summary judgment, finding that the interpretation of Allstate's policy was governed by Louisiana law, and that Louisiana has a strong interest in protecting and providing for uninsured motorist coverage when a vehicle is licensed and garaged in Louisiana.
Upon Allstate's application, this court granted a writ of certiorari to consider the correctness of the trial court's denial of summary judgment. Allstate contends that the trial court erred in applying Louisiana law to the interpretation of the Allstate policy.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Guedry v. Fromenthal, 633 So.2d 287, 288 (La.App. 1st Cir.1993). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Kosmala v. Paul, 93-2117 (La.App. 1st Cir. *672 10/7/94), 644 So.2d 856, 857. Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Kosmala v. Paul, 644 So.2d at 857.
After reviewing the record before us, we find no issues of fact that are material to the applicability of the uninsured motorist coverage. Accordingly, we need only consider whether Allstate is entitled to judgment as a matter of law. La.C.C.P. art. 966.

ALLSTATE'S POLICY
The Partins' policy with Allstate provides for uninsured motorist coverage of $50,000.00 each person/$100,000.00 each accident. Under Part IV, "Uninsured Motorists Insurance Coverage SS," of the policy, the definition of "uninsured auto" includes "an underinsured motor vehicle which has liability protection in effect and applicable at the time of the accident, but in an amount less than the applicable limit of liability for this coverage shown on the declarations page." Further, under Part IV(C), "Limits of Liability" of an amendatory endorsement affecting policies issued in Georgia, damages payable under the policy "will be reduced by ... all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage or property damage liability coverage of this or any other auto policy."
Thus, under the terms of the policy, it is clear that Allstate and the Partins agreed that uninsured coverage would not be available to the Partins if they recovered from anyone else who may be liable to them in an amount in excess of the coverage provided by the policy, $50,000.00/$100,000.00. Because the Partins have already recovered a total of $200,000.00, no uninsured motorist coverage is available to them under the terms of the Allstate policy unless the applicable state law mandates a contrary conclusion.

RELEVANT STATE LAW

Georgia Law
The above limitations contained in Allstate's policy permit an insured to invoke uninsured motorist coverage only where the bodily injury liability limits of the vehicle at fault are less than the uninsured motorist limits of the Allstate policy. Allstate contends that this limitation is allowed under Georgia law and that Georgia law applies in this case because the Partins' policy was issued to them in Georgia while they were residents of Georgia.
Georgia Statutes, Section 33-7-11(b)(1)(D)(ii), states:
"Uninsured motor vehicle" means a motor vehicle, other than a motor vehicle owned by or furnished for the regular use of the named insured ... as to which there is ... [b]odily injury liability insurance and property damage liability insurance with available coverages which are less than the limits of the uninsured motorist coverage provided under the insured's insurance policy, but the motor vehicle shall only be considered to be uninsured for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy[.]
Thus, under Georgia law, the vehicle driven by Dolby is an uninsured motor vehicle only if the liability coverage on the policy insuring that vehicle (State Farm's policy) is less than the uninsured motorist coverage contained in the Partins' Allstate policy. However, because Dolby's State Farm policy provided bodily injury liability limits of $100,000.00, twice the amount afforded to the Partins under the Allstate policy, Dolby's vehicle does not qualify as an uninsured motor vehicle under Georgia law.

Delaware Law
Allstate alternatively contends that under Delaware law, if applicable because the accident occurred in Delaware, the Partins would likewise not be entitled to uninsured motorist coverage under the Allstate policy.
Under 18 Del.C. Section 3902(a)(3)(a), an uninsured vehicle is defined as "[o]ne for *673 which there is no auto liability bond, insurance or other security applicable at the time of the accident in at least the amounts required by the financial responsibility law where the auto is principally garaged or registered[.]"
Thus, under Delaware law, uninsured motorist coverage is generally not applicable if there was legally sufficient automobile liability insurance (in amounts required by the applicable financial responsibility law) in effect insuring the vehicle causing the accident. Because the Dolby vehicle was covered for $100,000.00 under the State Farm policy, it does not qualify as an uninsured vehicle under Delaware law.

Louisiana Law
The Allstate policy issued to the Partins was effective from March 10, 1988 through September 10, 1988. The Louisiana uninsured motorist law in effect at that time, La.R.S. 22:1406(D), stated in pertinent part:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery with respect to any motor vehicle registered or principally garaged in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles ...; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits....
* * * * * *
(1)(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance ... then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance ... shall provide the following:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
Thus, the applicable Louisiana uninsured motorist law required that any automobile liability insurance policy delivered or issued for delivery with respect to any motor vehicle registered or principally garaged in Louisiana also provide uninsured or underinsured coverage in an amount not less than the limits of the policy's bodily injury liability coverage, unless rejected in writing by the insured. La.R.S. 22:1406(D)(1)(a)(i). Further, assuming that the Partins' damages exceed the limit of liability contained in Dolby's State Farm policy, then they may recover up to the limit of liability of the uninsured motorist coverage on the Sobers' vehicle which Juanita Partin was operating at the time of the accident. This vehicle was insured by Sentry with uninsured motorist limits of $100,000.00 per person. Additionally, since Partin was occupying a vehicle which she did not own at the time of the accident, Louisiana law allows the stacking of an additional uninsured motorist policy in order to increase the amount of coverage available to her. La.R.S. 22:1406(D)(1)(c). Thus, if Louisiana law applies, and to the extent their damages exceed the limits of Dolby's State Farm policy and Sobers' Sentry policy, the *674 Partins would be entitled to recover under the Allstate policy.

CHOICE OF LAW
In denying Allstate's motion for summary judgment, the trial court found that Louisiana's strong interest in requiring UM coverage on vehicles registered, garaged, and licensed in Louisiana dictated the application of Louisiana law to Allstate's policy, relying on Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). In determining whether the trial court's conclusion is correct, we must resolve the conflict of laws issue under an "interest analysis" theory.[4]Francis v. Travelers Insurance Company, 581 So.2d 1036, 1042 (La.App. 1st Cir.), writs denied, 588 So.2d 1114, 1121 (La.1991). Under the "interest analysis" theory, first adopted by the Louisiana Supreme Court in Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973), we weigh the interests of Georgia, Delaware, and Louisiana to see which state law has the most significant relationship to the transaction and to the parties. Francis v. Travelers Insurance Company, 581 So.2d at 1042, quoting the Restatement (Second) of Conflict of Laws, Vol. 1, Chapter 8, Introductory Note (1969).
This case involves a lawsuit between two Louisiana citizens and a Delaware citizen, regarding an accident which occurred in Delaware. The uninsured motorist policy in question was issued to cover a Louisianaregistered vehicle, but was issued in Georgia, under Georgia law, and to persons then living in Georgia. In fact, the vehicle insured by Allstate is not even the vehicle involved in the Delaware accident.
We find that the state with the most significant relationship to the transaction and parties herein is Georgia. Although the Partins formerly resided in Louisiana, at the time the insurance was obtained, they were residents of Georgia, and chose to purchase insurance for their Louisiana-registered vehicle under the terms of Georgia law. Likewise, Allstate issued the policy in conformity with Georgia law and contracted with the Partins to insure them against certain limited risks for a set premium, based on the requirements and restrictions of Georgia's insurance law. This fact is clearly provided by the language of the policy which states: "The premium for and the coverages of this policy have been established in reliance upon the provisions of the Georgia Motor Vehicle Accident Reparations Act."[5]
On the other hand, Louisiana's relationship with the transaction and parties herein is not as strong. The insurance policy at issue was not issued in Louisiana and was issued to persons not residing in Louisiana; further, the accident at issue did not occur in Louisiana and did not involve the Louisiana-registered vehicle insured under Allstate's policy. It is obvious that Louisiana's interest would be stronger had the insurance policy at issue been written in Louisiana and had it involved the Louisiana-registered vehicle insured under the policy. However, in our opinion, the application of Louisiana law in this case would impinge on the State of Georgia's right to regulate the insurance industry in that state. See Holcomb v. Universal Insurance Company, 93-1424 (La.App. 3d Cir. 6/1/94), 640 So.2d 718, 722, writ denied, 94-1740 (La. 10/7/94), 644 So.2d 643.
It is clear that Delaware also has an interest in the issues being litigated in this suit, since the accident occurred in Delaware and involved a Delaware tortfeasor. However, because the application of Delaware law would lead to the same results as the application of Georgia law, we find it unnecessary to weigh the competing interests of these two states.

*675 DECREE

For the above reasons, we find that the trial court erred in applying Louisiana law to the interpretation of Allstate's policy and in denying Allstate's motion for summary judgment. We further find that Georgia law is applicable to the interpretation of Allstate's policy and that Allstate is entitled to judgment as a matter of law. The trial court's denial of the motion for summary judgment is REVERSED. Judgment is hereby entered, GRANTING Allstate's motion for summary judgment, and DISMISSING the Partins' claim against Allstate with prejudice at their costs. The case is REMANDED to the trial court for further proceedings regarding the intervenor's claim.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record contains a document captioned "Interruption of Prescription by Acknowledgment" filed August 10, 1990, wherein defendants Dolby and State Farm formally acknowledge the claims of Juanita and Charles Partin against them for the purpose of interrupting prescription.
[3] On October 4, 1990, the Board of Trustees of the Electricians Health and Welfare Plan (the Board) filed a petition of intervention, alleging that the plaintiffs were participants in a group insurance plan operated by the Board, and seeking reimbursement for medical expenses the Board was required to pay on behalf of the plaintiffs.
[4] We note that the new choice of law articles, La.C.C. arts. 3515-3549, enacted by 1991 La. Acts No. 923, are not applicable in this case since they apply only to actions filed after January 1, 1992. See 1991 La. Acts 923, § 4; Reeves v. Allstate Insurance Company, 619 So.2d 202, 203 (La.App. 3d Cir.1993).
[5] In determining that Georgia law is applicable herein, we note that Roger v. Estate of Moulton, the case relied on by the trial court, does not dictate a different result. In Roger, Louisiana's interest in the application of uninsured motorist coverage was more definite than herein. The accident in Roger not only occurred in Louisiana, but also involved one of the Louisiana-registered vehicles covered by the uninsured motorist policy at issue.