476 So.2d 528 (1985)
Albert EFFERSON
v.
LINK BELT CORPORATION.
No. 84-CA-0851.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
O. Romaine Russell, Denham Springs, and Kevin P. Monahan, Baton Rouge, for plaintiff-appellant Albert Efferson.
Richard Creed, Baton Rouge, for intervenor-appellee United States Fidelity & Guaranty Co.
Madeline Fischer, New Orleans, for defendant-appellee Link Belt Corp.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
EDWARDS, Judge.
Plaintiff-appellant Albert Efferson brought this suit for personal injuries he sustained while working on a building site at the Blue Cross Building in Baton Rouge. *529 While Efferson was assisting in hooking leads from a crane onto wooden piles, one of the piles fell on his leg. He sued Link-Belt Corporation, which had supposedly manufactured the crane, claiming that some defect in the crane caused or contributed to the accident.
After an exchange of interrogatories defendant moved the court for summary judgment. The court denied the motion, instructing defense counsel to take plaintiff's deposition concerning design defects in the crane. This was done, after which defendant filed a second motion for summary judgment. The second motion was granted and plaintiff brought this appeal.
The two questions raised by plaintiff are, first, whether more than one motion for summary judgment may be filed in the same case, and second, whether the motion should have been granted.
The trial judge, in granting the motion, said:
The court is in receipt of a memorandum in opposition to the motion for summary judgment filed by Mr. Stewart on the basis that there is no statutory authority for a "renewed" motion for summary judgment. Of course, the opposition is in error; people can file motions for summary judgment, I presume, up until the time judgment is signed in a case. A person is not restricted to just filing one motion for summary judgment. So, the Court finds that Mr. Stewart's opposition has no merit whatsoever.
The summary judgment motion is governed by articles 966 through 969 of the Louisiana Code of Civil Procedure. While article 969 does bar the use of summary judgments in certain domestic cases, there are no other restrictions on the filing of summary judgments in the Code.
Plaintiff's counsel cites several cases having to do with the appealability of a denial of motion for summary judgment. He cites no cases, however, nor any other authority, limiting the number of times such a motion may be considered. Since there is no case or statute to the contrary, this court holds that it was not error for the trial judge to hear the motion for summary judgment a second time.
Plaintiff's second assignment of error is that the motion should not have been granted. This requires an examination of the facts supporting the motion.
On the date of the accident, petitioner, Albert Efferson, was working for Binnings Construction Company on the building site of the Blue Cross building in Baton Rouge. At the time, Mr. Thomas Bowles, Sr. was operating a crane in the process of picking up piles, placing them in position and driving them into the ground (Deposition of Bowles, pp. 5-6). Efferson was assisting in hooking the leads of the crane on to the piles. Mr. Bowles described the accident as follows:
Well, the only thing I can tell you is we were working on the job, and we got pilings set up like this (indicating), you know, one right on top of the other. They hooked onto the pile; they walked out from in front of the piles; I got the okay, picked it up. When I started picking the pile up, I looked at my hammer, pulled my hammer up in the air. When I looked back down, the piling was on the man's leg, and immediately I knocked everything out, out of gear, stopped it. We got the pile off the man's leg, and he was laying there on the ground. That's all I know.
(Id., p. 6.) Mr. Bowles was questioned in detail as to whether anything had gone wrong with the crane at the time of the accident:
Q. Was there anything that you know of, as an equipment operator, that was faulty with the crane?
A. Not to my knowledge. Of course, you know, every piece of equipment has got a little something wrong with it, you know. It could be that theone of the levers is bent, or it could be when it gets wet the friction sticks, or when it gets wet the brake will slip.
Q. Right, but did anything malfunction at this time?

*530 A. Not that I know of.

Q. In other words, you were operating the crane; you were usingyou were doing what you would normally do, right?
A. I would do the normal day's work just the way I've always done it, continuously day after day. They go there; they hook the chain onto the pile; they walk out from in front of the pile; stand over here (indicating); and I pick the pile up.
Q. And as far as you know, there was nothing wrong with the crane?

A. As far as I know.

Q. And it worked all right as far as you know?

A. It worked all right before and afterwards.

Q. And you continued to use it that same day?
A. I did. After I settled down for about an hour, I got back on the crane and continuously used it.
Q. And you have had no problem in operating the crane?

A. None whatsoever.

Id., pp. 8-9. (Emphasis added).
Mr. Bowles theorized that either Mr. Efferson could have walked back into the pathway of the pile or that the pile could have jumped over another pile and slid. (Id., p. 14.) At no time did he suggest that at the time of the accident any malfunction had occurred.
Further, plaintiff in answers to interrogatories admitted that he did not know "the defects or the defective condition of the crane". (Answer to interrogatory # 9.) As of the date of the hearing on the first motion for summary judgment, the plaintiff had not retained an expert witness, had not examined the crane, and did not know where the crane was.
The deposition of Mr. Efferson made it clear that Mr. Efferson did not himself have any personal knowledge of any malfunction in the crane.
He was not looking at it at the time of the accident because he had his back to it and was facing the pile. The following was his testimony on the subject at the time of his deposition:
A. "I mean I don'tI mean I didn't see exactly what happened because I had my back to the rig. I was standing with my back to the rig."
Q. "Right. You were looking at the pile, were you not?"
A. "I was looking at the pile, and whenever it knocked me down, I couldn't see nothing because that was about a 40-foot pile they were rolling up and down my leg, and I was just wondering how much damage it was going to do."
(Deposition of Efferson, p. 23, 11.12-19.) Mr. Efferson further stated that he had not personally examined the crane at the time of the accident nor at any time afterwards. (Id., p. 24, 11.3-7.)
Mr. Efferson was questioned extensively as to his personal knowledge of anything that might have been considered a defect in this crane:
Q. "Okay. Do you know of anything thatkeeping in mind that you don't have a design background, do you know of anything that was wrong with the design of this crane?"
A. "I don't know anything about them."
Q. "Do you know about anything that went wrong in the manufacture of this crane?"
A. "I wouldn't know."
Q. "Do you know what sort of maintenance was supposed to be done on this crane by the company that owned it?"
A. "No, ma'am. I don't."
Q. "So, you wouldn't know whether they followed that program or anything like that?"
A. "Well, the week that I was out there, I hadn't seen anybody, you know, stopping to work on the thing or maintenance or nothing, the week that I'd been out there."

*531 Q. "And the crane had been in use every day for that week?"
A. "Yes, ma'am."
Q. Approximately a week?"
A. "Yes, ma'am."
Q. "No accidents had occurred up until that time?"
A. "No, ma'am."
Q. "Do you know how long Binnings Construction Company had owned the crane?"
A. "No, ma'am."
(Id., pp. 28-29, 11.24-23.)
Mr. Efferson testified that he was being assisted in the pile-hooking maneuver by a Mr. Hano and that Mr. Hano also was not looking at the crane and had no idea of how the accident had happened. (Id., p. 36, 11.-4-11.)
A party who seeks a summary judgment bears the burden of showing that there is no genuine issue of material fact. Any doubt as to granting the motion shall be resolved in favor of trial on the merits. An opponent to a motion for summary judgment cannot solely rely on the allegations or denials of his own pleadings, but must file counter affidavits or give stated reasons why he cannot present facts by affidavits in support of his opposition to the motion. The mere possibility that an opponent could raise a factual issue does not defeat a summary judgment if the opponent does not raise it. Atkins v. Allstate Insurance Company, 361 So.2d 32 (La.App. 3rd Cir.1978), writ denied 363 So.2d 535 (La.1978), and numerous cases cited therein.
Neither plaintiff nor the crane operator had any knowledge of a defect or malfunction in the crane. There is no indication of any sort in the record which raises a fact question concerning the crane's defective manufacture or operation. Indeed, defendant has maintained from the beginning of the suit that it did not manufacture this particular crane, and there is nothing in the record to the contrary.
Accordingly, we hold that the trial court was correct in granting summary judgment in this lawsuit.
The appellant is cast for the cost of this appeal.
AFFIRMED.