754 So.2d 1088 (1999)
Michael MELTON and Renea White Melton
v.
James MILEY, J. Miley, Inc., and Credit General Insurance Company.
No. 98 CA 1437.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Writ Denied January 7, 2000.
George R. Covert, Sean D. Fagan, Baton Rouge, Counsel for Plaintiffs/Appellants Michael Melton and Renea White Melton.
Vincent P. Fornias, and C. William Belsom, Jr., Baton Rouge, Counsel for Defendant/Appellee ITT Hartford Ins. Group.
Before: SHORTESS, PARRO, and KUHN, JJ.
*1089 KUHN, J.
This is an appeal by plaintiffs-appellants, Michael and Renea Melton, from the dismissal of their claims by summary judgment against defendant-appellee, ITT Hartford Group ("Hartford"), who is alleged to provide uninsured/under-insured motorist ("UM") coverage of the vehicle being driven by Michael Melton when he was injured in an automobile accident. We affirm.

I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
This dispute arises out of multi-party litigation after a vehicular accident on Bluebonnet Blvd in Baton Rouge on April 15, 1995. According to the allegations of plaintiffs' first amending and supplemental petition, at the time of the accident, Michael Melton was driving a vehicle for which UM coverage was provided by Hartford. The parties apparently do not dispute that Melton was driving a vehicle owned by American Remedial Technology, Inc. ("ART") and for which he was an authorized driver. In its answer, Hartford admitted that it provided a liability policy covering the ART vehicle but averred that UM coverage had been contractually rejected by ART.
On June 10, 1997, Hartford filed a motion for summary judgment, urging entitlement to dismissal from the plaintiffs' lawsuit as a matter of law. After a hearing, the trial court denied the motion. On February 6, 1998, Hartford filed another motion for summary judgment, again maintaining that because the insured had rejected UM coverage, it was entitled to be dismissed from plaintiffs' lawsuit. After a hearing on March 9, 1998, the trial court granted Hartford's second motion and dismissed the Meltons' claims against the insurer. A judgment, in conformity with the trial court's ruling, was signed on April 7, 1998. From that judgment, plaintiffs appeal, suggesting the trial court erred in its conclusion that ART had "legally perfect" the UM waiver.

II. SUMMARY JUDGMENT

A. ALLEGED PROCEDURAL DEFECTS
Preliminarily, we address the contentions of procedural defects in Hartford's motion for summary judgment. We note La. C.C.P. art. 966 provides:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the *1090 movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
Summary judgments are favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA, Inc ., 29,835, pp. 4-5 (La.App.2d Cir.9/24/97), 699 So.2d 1149, 1152. Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 at p. 7, 696 So.2d 1031, 1035.

1. Second Filing of Motion for Summary Judgment
Plaintiffs contend Hartford should have been prevented from re-urging a second motion for summary judgment after the first motion for summary judgment had been denied.
Although plaintiffs urge that it is inappropriate for the trial court to rehear a motion for summary judgment which has previously been denied, we find no authority supporting this argument. In both Francioni v. Rault, 570 So.2d 36 (La.App. 4th Cir.1990), writ denied, 575 So.2d 371 (La.1991) and Efferson v. Link Belt Corp., 476 So.2d 528 (La.App. 1st Cir.1985), it was held not to be error for the trial court to hear the re-urging of a motion for summary judgment. "Since there is no case or statute to the contrary, this court holds that it was not error for the trial judge to hear the motion for summary judgment a second time." Metz v. Nichols Constr. Corp., 615 So.2d 967, 969 (La.App. 1st Cir.1993) (citing Efferson, 476 So.2d at 529). See also Young v. Dupre Transport Co., 97-0591, pp.1-2 (La.App. 4th Cir.10/1/97), 700 So.2d 1156, 1159 (wherein the court found no error with mover, having been denied summary judgment, later re-urging motion because such denial was not an adjudication and had no res judicata effect) Accordingly, we find no error in the trial court's consideration of Hartford's second motion for summary judgment.

2. Filing of Affidavits into the Record
Plaintiffs maintain the trial court erred procedurally in granting summary judgment because it relied on affidavits filed into the record with Hartford's motion and memorandum, but not independently introduced into evidence at the hearing. We note the supreme court in Aydell v. Sterns, 98-3135 (La.2/26/99), 731 So.2d 189, stated that affidavits submitted by the defendant as attachments to its memorandum in support of its motion for summary judgment were properly before the trial court, even though the affidavits were not attached to the motion and were not entered into evidence at the hearing. Accordingly, we find no error in the trial court's consideration of affidavits properly served and duly filed into the record.

III. VALIDITY OF UM REJECTION
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. See La. R.S. *1091 22:1406(D). The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). The requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected. Id.
Plaintiffs urge that the UM selection form executed by Hartford's insured, ART, failed to conform to the criteria set forth in Roger . In Roger, the Louisiana Supreme Court stated:
[t]o effect a valid rejection of the UM coverage under La. R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. This narrow reading of La. R.S. 22:1406(D)(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim of the negligent uninsured or underinsured motorist.
Roger, 513 So.2d at 1132.
The rejection in this case neither identifies the policy by policy number, nor includes a date alongside the signature on the UM selection portion of the form. Plaintiffs contend that it, therefore, is an invalid rejection and, because the uninsured motorist coverage was not validly rejected, coverage is provided by virtue of Louisiana law. La. R.S. 22:1406(D)(1)(a). We disagree.
We initially note that in order to have a valid UM rejection, the rejection must be in writing, and signed by the "named insured" or his "legal representative." La. R.S. 22:1406(D)(1)(a). Hartford introduced the affidavit of Lynette Hart, who testified that she held the position of Secretary-Treasurer for ART; and that her duties for ART included selecting, processing and administering of liability insurance on behalf of ART. Hart's affidavit details the alternative UM selections, notes that the options made available to ART were explained to her and identifies her handwritten initials next to the rejection options which she selected for ART. Hart's affidavit also identifies her signature, on page 2 of the two-page UM selection form, which she attests was "executed in her official capacity on behalf of [ART]." Based on Hart's affidavit, Hartford established that the UM waiver was signed by a legal representative of ART.
We turn now to plaintiffs' assertion that the lack of a date and policy number alongside Hart's signature invalidate ART's UM rejection. The UM selection form is entitled "Supplemental Application/Uninsured Motorists Coverage/Your Choices In Louisiana." On the first page of the form is a detailed explanation of the UM coverage for bodily injury and property damage available to an applicant. The final paragraph of that page states in relevant part:
Please be sure to fill out, sign and return this Supplemental Application to your Hartford representative. To elect optional Uninsured Motorists coverage limits or to reject the coverage entirely, you must sign and return this form. The choice you make below will apply to... any policy for which you may be applying....
The second page of the UM selection form provides the following:
I have read and understand the Uninsured Motorists coverage options explained in this Supplemental Application. *1092 Please write my policy with the Uninsured Motorists Bodily Injury coverage option I have indicated below:
Of the available options, an "x" was placed in the box before "I reject Uninsured Motorists Bodily Injury coverage entirely," with the initials "LH" handwritten next to it. The form thereafter denotes "UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE" with a listing of available options. An "x" was placed in the box in front of the option, "I reject Uninsured Motorists Property Damage Coverage," and the handwritten initials "LH" were affixed at the end of this option.
On a line at the bottom of the text on page two, next to the pre-printed word "Signed" handwritten is "American Remedial Technology, Inc./ By Lynette Hart." The line next to the pre-printed word "Date" is left blank, as were the lines for "Producer" and "Code." The line provided next to the pre-printed words "Policy Number" is also blank; however, next to the line is stamped the word "ATTACH." Hart's affidavit explains she did not write the date because she did not know what the effective date of the policy would be and she did not want to jeopardize the UM rejection by having a different date. We note also that no policy number had been issued at the time ART's application was completed.
Hartford urges that in construing the validity of the UM waiver executed for ART, the "Commercial Insurance Application" form filled out for ART must be referenced. Hartford maintains that the entire application document consists of this form as well as the UM selection form, which Hartford notes is entitled "Supplemental Application."
The four-page "Commercial Insurance Application" form was signed by Godfrey L. Marine, the insurance broker who submitted ART's commercial insurance application to Hartford and who was, for this purpose, the authorized representative of the newly-formed business entity ART. On the first page of the application, in the space for a proposed effective date is typed "07/02/94." In the "BUSINESS AUTO SECTION" of the commercial insurance application form, the proposed effective date again states "07/02/94." In that same section, in the portion designated for uninsured motorists coverage appears "$REJECTED." Likewise "$REJECTED" is inserted in that portion designating underinsured motorists coverage. On the following page, in the section of the commercial insurance application which is entitled "REMARKS," typewritten is the statement, "Signed UM form rejecting coverage is attached."
We find that the form entitled "Commercial Insurance Application" and the form entitled "Supplemental Application/Uninsured Motorists Coverage/Your Choices In Louisiana" constitute a single document. Each expressly cross-references the other form. See Haney v. Zurich Ins. Co., 96-0393, p.9 (La.App. 4th Cir.9/22/96), 680 So.2d 1270, 1274. Thus, reading the two forms in pari materia, it is evident that the rejection of UM coverage by ART commenced on July 2, 1994.
Hartford also introduced the affidavit of Matt Sally, the Hartford commercial insurance underwriter who processed ART's application, in which he identified Godfrey L. Marine as the insurance broker and authorized representative of ART. Additionally, Sally attested that Hartford had issued only one liability policy to ART and "[t]herefore, there was absolutely no question that the executed rejection form that was a part of the [commercial insurance] application packet pertained to the one and only Hartford policy" issued to ART.
Hartford established in this case that it issued only one policy of insurance providing coverage to ART. The rejection form clearly rejects UM coverage and necessarily refers to the one particular policy which, absent a valid rejection, would provide UM coverage in Louisiana. Thus, inclusion of *1093 the policy number on the UM selection portion of the policy application was not necessary. See Schwoch v. Sutor, 559 So.2d 552, 554 (La.App. 2d Cir.1990). Also, a rejection can be made in advance of a policy being issued at which time the policy number is unknown. Schwoch, 559 So.2d at 555. This scenario is precisely the situation before us. Thus, we find the lack of a policy number on the UM selection portion of the policy application form does not invalidate the unequivocal rejection of UM coverage by ART.

IV. CONCLUSION
For these reasons, we find no error in the trial court's determination that ART executed a valid UM coverage rejection on its insurance policy with Hartford. Accordingly, the judgment of April 7, 1998, dismissing the claims of plaintiffs, Michael and Renea Melton, against ITT Hartford Group, is affirmed. Costs of this appeal are assessed against the Meltons.
AFFIRMED.