833 So.2d 1256 (2003)
Gwendolyn BELT and Patsy Long, individually and on Behalf of the Estate of Rosemary B. Robinson, Plaintiffs-Appellants
v.
Dr. Bruce WHEELER, Sterlington Memorial Hospital, Dr. Edward Coleman, and Glenwood Regional Medical Center, Defendants-Appellees.
No. 36,585-CA.
Court of Appeal of Louisiana, Second Circuit.
December 18, 2002.
Rehearing Denied January 23, 2003.
*1258 Silvestri & Massicot, by John Paul Massicot, Frank A. Silvestri, New Orleans, for Appellants Gwendolyn Belt and Patsy Long.
Roby & Smith, by Clarence Roby, Jr., New Orleans, Intervenor Appellee In Proper Person.
Crawford & Anzelmo, by Donald J. Anzelmo, Monroe, for Appellee Bruce Wheeler, M.D.
McLeod Verlander, by David E. Verlander, III, Monroe, for Appellee Edward Coleman, M.D.
Watson, Blanche, Wilson, Posner, by Renè J. Pfefferle, Baton Rouge, for Appellee Glenwood Regional Medical Center.
Nelson, Zentner, Sartor & Snellings, by David Hyland Nelson, for Appellee David Walsworth, M.D.
Hudson, Potts & Bernstein, by Gordon L. James, Jesse D. McDonald, Monroe, for Appellee Robert C. Ewing, M.D.
Before BROWN, WILLIAMS and STEWART, JJ.
STEWART, J.
In this medical malpractice action, the trial court granted motions for summary judgment by the defendants, Dr. David Walsworth and Glenwood Regional Medical Center ("Glenwood"). The plaintiffs, Gwendolyn Belt and Patsy Long, appeal the summary judgments dismissing their claims against these two defendants. For the following reasons, we affirm the judgment in favor of Glenwood, but we reverse the summary judgment in favor of Dr. Walsworth and remand for further proceedings.

FACTS
This medical malpractice action arose from the death of the plaintiffs' mother, Rosemary Robinson. Ms. Robinson died at the age of sixty-seven on May 29, 1992, as a result of multiple organ failure. It appears that Ms. Robinson's death was precipitated by toxic epidermal necrosis, which will be referred to hereinafter as "TEN". TEN is a rare condition which has a high mortality rate. It possibly results as an adverse reaction to certain drugs. TEN begins as a rash, progresses to bullous lesions, and results in sloughing of the skin which exposes the body to infections. Patients suffering from TEN are often treated in burn units.
Ms. Robinson had been a nursing home resident when she was admitted to Sterlington Memorial Hospital on April 10, 1992. She was treated by Dr. Bruce Wheeler for complaints of fever and a rash. Dr. Wheeler transferred Ms. Robinson to Glenwood on April 30, 1992, for further testing. Ms. Robinson was admitted to Glenwood under the care of Dr. Edward Coleman. On the morning of May 6, 1992, Ms. Robinson exhibited symptoms of bullous skin lesions and sloughing of her skin. Dr. Coleman consulted with Dr. Robert Ewing, an internal medicine specialist. Dr. Ewing suspected that Ms. Robinson might have developed TEN, and he consulted a dermatologist, Dr. David Walsworth. Dr. Walsworth performed a skin biopsy and concurred in the treatment being provided by Dr. Ewing. Ms. Robinson continued to be treated at Glenwood, which had no burn unit, until she was transferred to the burn unit at Louisiana State University Medical Center in Shreveport, (hereinafter "LSUMCS"), on May 12, 1992, where she later succumbed to her illness and died.
*1259 In their first petition for damages, the plaintiffs named Dr. Coleman, Dr. Wheeler, Sterlington Memorial Hospital, and Glenwood as defendants. The claims against Sterlington were eventually dismissed pursuant to an unopposed motion for summary judgment. A motion for summary judgment by Glenwood was denied by the trial court on March 14, 2000. The trial court concluded that whether Glenwood breached a duty in failing to transfer Ms. Robinson to a burn unit at an earlier date or failed to take actions a reasonable person would have taken under the circumstances were questions for the jury.
Thereafter, plaintiffs filed an amended petition to include Dr. Robert Ewing and Dr. David Walsworth as additional defendants. Both Dr. Wheeler and Dr. Walsworth filed motions for summary judgment. In addition, Glenwood again filed a motion for summary judgment. The trial court denied Dr. Wheeler's motion, but granted summary judgment in favor of Dr. Walsworth and Glenwood.[1] At issue in the motions filed by Dr. Walsworth and Glenwood was whether these parties breached the standard of care in failing to transfer or recommend transfer of Ms. Robinson to a burn unit at an earlier date.
In his motion for summary judgment, Dr. Walsworth argued that plaintiffs lacked expert testimony that he breached the standard of care. He asserted that he was only consulted for the purpose of performing a skin biopsy and that he did so and reported the findings to Dr. Ewing. Plaintiff's position was that the national standard of care for treatment of TEN requires that such patients be treated in a burn unit. According to plaintiffs, Dr. Walsworth should have recommended that Ms. Robinson be transferred to a burn unit for treatment and his failure to do so was a breach of the standard of care.
Glenwood, too, argued that the plaintiffs had no expert testimony that it breached the standard of care. Glenwood asserted that the physician, not the hospital, determines whether to transfer a patient to another facility for treatment. Plaintiffs argued that the denial of Glenwood's first motion for summary judgment was the law of the case and that this second motion should likewise be denied. Plaintiffs also argued that there was an issue of fact as to whether Glenwood breached a duty by allowing treatment of Ms. Robinson to continue at its facility which had no burn unit, no protocol for treatment of burn victims, and facilities unsuitable for treatment required by Ms. Robinson's condition.

DISCUSSION
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2); Hinson v. Glen Oak Retirement Home, 34,281 (La.App.2d Cir.12/15/00), 774 So.2d 1134; Gardner v. Louisiana State University Medical Center in Shreveport, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, where the movant will not bear the burden of proof at trial on the *1260 matter before the court on summary judgment, the movant need only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. The adverse party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to come forward with such evidence, there is no genuine issue of material fact for trial and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Hinson, supra; Lee v. Wall, 31,468 (La. App.2d Cir.1/20/99), 726 So.2d 1044; Gardner, supra.
Appellate courts conduct a de novo review of summary judgments and the documentation supporting and opposing the motion under the same criteria which govern the trial court's determination of whether summary judgment is appropriate. Lee v. Wall, supra; Gardner, supra.
Plaintiffs in a medical malpractice action have the burden of proving the applicable standard of care, the breach of the standard of care, and the causal connection between the breach and the resulting injuries. La. R.S. 9:2794(A); Hinson, supra; Orea v. Brannan, 30,628 (La. App.2d Cir.6/24/98), 715 So.2d 108. Generally, opinions of expert witnesses who are members of the medical profession are necessary in a medical malpractice action to determine whether the defendant possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La. 1991); Hinson, supra; Lee, supra.
Having set forth the applicable standards for review of summary judgments rendered in medical malpractice actions, we turn now to examine the motions at issue.
Motion for Summary Judgment by Glenwood
The summary judgment being appealed was granted in response to the second such motion filed by Glenwood in this action. The first motion was denied. Plaintiffs argued before the trial court and argue on appeal that the doctrine of law of the case should apply to bar Glenwood's second motion. Jurisprudence has consistently found no error in the trial court hearing a second motion for summary judgment after having denied a previous motion. Rogers v. Horseshoe Entertainment, 32,800 (La.App.2d Cir.8/1/00), 766 So.2d 595, writ denied, 2000-2894 (La.12/8/00), 776 So.2d 463 and 2000-2905 (La.12/8/00), 776 So.2d 464; Ward v. Hermitage Ins. Co., 28,236 (La.App.2d Cir.4/3/96), 671 So.2d 1229; Melton v. Miley, 98,1437 (La.App. 1st Cir.9/24/99), 754 So.2d 1088, writ denied, 99-3089 (La.1/7/00), 752 So.2d 867; Francioni v. Rault, 570 So.2d 36 (La.App. 4th Cir.1990), writ denied, 575 So.2d 371 (La. 1991); and Efferson v. Link Belt Corp., 476 So.2d 528 (La.App. 1st Cir.1985). Accordingly, we find no error in the trial court entertaining Glenwood's second motion for summary judgment, which was filed after the addition of new defendants and the opinion of a second medical review panel which referred approvingly to the care provided by Glenwood to Ms. Robinson.
In support of its motion for summary judgment, Glenwood produced the opinions of the medical review panels and numerous excerpts from the depositions of experts in the medical profession. Glenwood sought to establish that the decision to transfer a patient is one made by a physician rather than by a hospital, and thus demonstrate an absence of factual support for the plaintiffs' claim against it.
*1261 The first medical review panel concluded that the evidence did not show that Glenwood failed to meet the applicable standard of care. In depositions, each doctor from the panel concluded that Glenwood did not breach the standard of care and that the decision to transfer a patient is one made by the treating physician.[2] The second medical review panel convened to examine the plaintiffs' claims against Drs. Walsworth and Ewing. In doing so, the panel examined whether these doctors breached the standard of care in failing to transfer Ms. Robinson to LSUMCS sooner. The panel concluded that neither doctor breached the standard of care. The panel further noted in its written opinion that the care provided by Glenwood to Ms. Robinson was "appropriate care and very similar care to what would have been provided at a burn facility," and that Glenwood "was adequately equipped with staff personnel and equipment to provide supportive care to this patient."
The defendants, Drs. Coleman, Ewing, and Walsworth, all testified in depositions that they had no criticism of Glenwood in its care of Ms. Robinson. Dr. Coleman and Dr. Ewing agreed that the decision to transfer a patient is one made by the physician and not by the hospital.
Glenwood introduced excerpts from depositions of medical professionals retained by plaintiffs. Glenwood sought to show that none of the plaintiffs' experts believed it breached the standard of care. Plaintiffs relied on these same experts to show a genuine issue of material fact for trial as to whether Glenwood breached the standard of care in not acting to transfer Ms. Robinson to a burn unit sooner.
One such expert was Dr. Duane Murphree, a family practitioner, who discussed the quality of care provided in burn units as opposed to regular hospital wards. Dr. Murphree explained that burn units have the benefit of personnel with specialized knowledge, a higher nurse to patient ratio, and therapies and protocols which ensure an optimum result for the patient. However, as pointed out in the excerpt relied upon by Glenwood, Dr. Murphree had no specific criticism of the care provided by Glenwood to Ms. Robinson.
Another expert relied upon by both parties was Dr. Edwin A. Deitch, a surgeon who treated Ms. Robinson at LSUMCS. Dr. Deitch stated in his deposition that the earlier a TEN patient is transferred to a burn unit and the earlier aggressive therapy is started, the better the chance of survival. Dr. Deitch opined that Ms. Robinson's therapy could have been better prior to her transfer to the burn unit at LSUMCS. However, Dr. Deitch found nothing in the medical records he reviewed which would allow him to conclude that Glenwood's care of Ms. Robinson either did or did not breach the standard of care.
Both parties also relied upon the deposition testimony of Dr. Charles Stratton, an infectious disease specialist from Vanderbilt University. Dr. Stratton explained that TEN is well recognized in the medical literature and that the standard of care, no matter what the medical specialty, requires treatment of such patients in a burn center. Dr. Stratton believed that Ms. Robinson should have been transferred to a burn center on May 6, 1992, when the lesions first appeared, and that the failure to do so was a breach of the standard of care. However, Dr. Stratton also stated that the decision to transfer a patient is to be made by a physician and not by the *1262 hospital. When asked whether he had any criticism of the care provided by Glenwood, Dr. Stratton answered, "Not other than to say that they were not prepared to deal with what they had and that's why the patient needed to be transferred." When asked whether this meant that Glenwood breached the standard of care, Dr. Stratton explained:
No, you don't have to have a burn unit in a hospital to meet the standard of care, but your physicians need to know when to use a burn unit if you have one available and so that's what I'm saying. I'm not saying that they should have had a burn unit. I'm saying they didn't and for that reason the patient needed to be transferred to a burn unit.
Having reviewed the entirety of the supporting and opposing documentation offered by the parties, we conclude that summary judgment in favor of Glenwood is appropriate. There is no evidence to suggest that the plaintiffs will be able to meet their evidentiary burden of proving that Glenwood breached the standard of care.
Generally, a hospital is bound to exercise the requisite standard of care toward a patient that his or her condition may require and to protect the patient from external circumstances peculiarly within the hospital's control. Piro v. Chandler, 33,953 (La.App.2d Cir.11/1/00), 780 So.2d 394; Borne v. St. Francis Medical Center, 26,940 (La.App.2d Cir.5/10/95), 655 So.2d 597, writ denied, 95-1403 (La.9/15/95), 660 So.2d 453. The record appears to establish that the standard of care for treatment of TEN patients generally requires treatment in a burn unit to increase the chance of survival. Glenwood did not have a burn unit. This fact does not lead to the conclusion that Glenwood breached the standard of care. The evidence offered on this motion establishes that the decision to transfer a patient falls within the realm of expertise of physicians. Doctors, not hospitals, decide whether a patient's condition requires treatment at another facility. While Ms. Robinson may have been better off had she been transferred to a burn center sooner, nothing in the record indicates that this was a decision for Glenwood to make. Dr. Stratton recognized that Glenwood may not have been the most suitable facility in which to treat a TEN patient, but he still found no breach of the standard of care by Glenwood. Instead, he explained that it is a physician's responsibility to recognize the type of treatment a patient requires and to make decisions which ensure the patient obtains appropriate treatment.
The circumstances here are factually distinguishable from those in Gladney v. Sneed, 32,107 (La.App.2d Cir.8/18/99), 742 So.2d 642, writ denied, 99-2930 (La.1/14/01), 753 So.2d 215, in which a hospital was found at fault in the wrongful death of a patient due to a number of deficiencies, one of which was the failure to transfer. Not only was the small, rural hospital ill-equipped to deal with the patient who presented with multiple traumas, but it also lacked any protocol for transferring such patients to larger facilities, it hired a physician who lacked the training and expertise to work in the emergency room, its nurses failed to notice symptoms of shock in the patient and failed to treat her appropriately in a number of respects, and its emergency room had a broken laryngoscope and was out of epinephrine. In the instant case, there is no showing of any wrongdoing on the part of Glenwood and its employees. There was no criticism of the care provided by Glenwood through its nursing staff. Most importantly, there was no showing that Glenwood's lack of protocol for transferring patients whose condition might benefit from treatment in a burn unit contributed to any delay in Ms. *1263 Robinson's transfer once the decision to transfer had been made by her treating physician.
For these reasons, we find there is no genuine issue of material fact for trial on the plaintiffs' claims against Glenwood. There is no evidence tending to show that Glenwood breached its duty of care owed Ms. Robinson. The decision of whether or when to transfer her for treatment at a burn unit was one to be made by the physicians treating Ms. Robinson and not by Glenwood. For these reasons, we affirm the trial court's grant of summary judgment in favor of Glenwood.

Motion for Summary Judgment by Dr. Walsworth
In his motion for summary judgment and on appeal, Dr. Walsworth argued that the plaintiffs have no evidence of any breach of the standard of care on his part and have not even identified any dermatologist as an expert on their behalf. Dr. Walsworth contends that he was never consulted to undertake treatment of Ms. Robinson, but was merely consulted for the purpose of performing a skin biopsy, which he asserts revealed a pathology consistent with TEN, but not diagnostic of that condition.
Dr. Walsworth submitted the favorable medical review panel opinion which found no evidentiary support for the claim that he failed to meet the applicable standard of care. In its written reasons, which were also submitted by Dr. Walsworth in support of his motion, the panel concluded that Dr. Walsworth's involvement with Ms. Robinson was very limited as he only saw her on one occasion when he performed the skin biopsy. The panel found no indication that he was involved in the management of Ms. Robinson, that he was asked to take a more active role in her treatment, or that he was asked to make treatment recommendations. The panel concluded that Dr. Walsworth followed standard protocol in reporting the biopsy findings to Dr. Ewing, who had initiated the consult.
Dr. Walsworth also submitted his own affidavit and deposition testimony which set forth his involvement in Ms. Robinson's treatment. Dr. Walsworth explained that he saw Ms. Robinson only when he did the skin biopsy on May 6, 1992, and that he was merely called in as a consult for purposes of performing the biopsy. Dr. Walsworth did not recall any conversations with either Dr. Ewing or Dr. Coleman pertaining to Ms. Robinson. In a note written on May 6, 1992, Dr. Walsworth indicated a differential diagnosis for Ms. Robinson's condition and stated that he agreed with the present therapy involving treatment with silvadene. Dr. Walsworth explained in his deposition that he generally comments as to whether he feels comfortable with how a patient is being treated, but he did not believe that he was expected to have further involvement in her care. Dr. Walsworth also agreed in his deposition that patients with TEN are best managed as burn patients. He believed that Dr. Ewing was doing everything to manage Ms. Robinson as a burn patient and that he could think of nothing different she would have received in a burn center. Dr. Walsworth also agreed that medical literature recommends treatment in burn centers for severe skin problems. He explained that severity is determined by the attending physician. When asked whether he was qualified to advise Drs. Coleman and Ewing to refer Ms. Robinson to a burn center, Dr. Walsworth answered that based on circumstances such as how the patient looked and was being treated, he would possibly recommend that as an option. Finally, Dr. Walsworth insisted that as of May 6, 1992, *1264 when he saw Ms. Robinson, there was not a firm diagnosis of TEN.
In opposing Dr. Walsworth's motion for summary judgment, plaintiffs refute the need for a dermatological expert by maintaining that a national standard of care applies to the treatment of TEN, that this standard of care applies regardless of specialty, and that the standard of care requires treatment of such patients in a burn center. As previously mentioned, Dr. Stratton testified in his deposition regarding a national standard of care which crosses specialties. The trial court also previously denied a motion in limine by other defendants to limit testimony to a community standard of care. Jurisprudence has also recognized an exception to the locality rule set forth in La. R.S. 9:2794(A)(1).[3] This exception provides that where there is a uniform national method for performing a particular procedure, an expert with knowledge of the procedure may testify and is not constrained by the need to have practiced in a similar community or locale or under similar circumstances. Leyva v. Iberia General Hospital, 94-0795 (La.10/17/94), 643 So.2d 1236; Piazza v. Behrman Chiropractic Clinic, Inc., 601 So.2d 1378 (La. 1992); Rowsey v. Jones, 26,823 (La.App.2d Cir.5/10/95), 655 So.2d 560.
Although there is no identified expert in dermatology, there is testimony of a nationwide standard of care applicable regardless of specialty which requires treatment of TEN patients in burn units. There is also Dr. Walsworth's own deposition in which he indicates knowledge of the need to treat TEN patients as burn patients and the need to treat severe skin problems in a burn center. We cannot say that the failure to identify a expert in dermatology is fatal to the plaintiffs' case at this juncture.
Plaintiffs also relied on excerpts from the deposition of Dr. Stephen Deitelzweig, another medical expert in the case, whose testimony suggests that Dr. Walsworth should have recommended referral to a burn unit as part of his consultation. Dr. Deitelzweig opined that a request for a consultation is more than a procedural request. If the doctor has something to offer, then he should provide such information. Dr. Deitelzweig believed that Dr. Walsworth, as a dermatologist, should have had some input regarding treatment and that he should have "raised the options," which may have included referral to a burn unit for treatment. Dr. Deitelzweig went on to explain that referral to a burn unit may have been an option because he was not convinced that Ms. Robinson's outcome would have been different. He also noted that if Glenwood was able to provide adequate resources and good care, then it may not have been necessary to move Ms. Robinson to another facility.
While Dr. Deitelzweig does not categorically state that Dr. Walsworth breached the standard of care, his deposition testimony can be understood as suggesting that conclusion and raises issues of fact that must be decided by a jury. Plaintiffs also submitted the answers to interrogatories by Dr. Coleman which indicate that he *1265 had conversations with Dr. Ewing and Dr. Walsworth regarding Ms. Robinson's condition and that he deferred to their greater expertise in treating Ms. Robinson for TEN.
Thorough review of the documentation supporting and opposing Dr. Walsworth's motion for summary judgment, convinces this court that genuine issues of material fact remain for trial. These issues involve the extent of Dr. Walsworth's role beyond simply performing the skin biopsy and reporting the pathological findings to Dr. Ewing. Although Dr. Walsworth insists that his role was limited to the biopsy, his deposition shows that he did note his approval of treatment. There are issues as to whether Dr. Walsworth took a more active role in treatment as suggested by Dr. Coleman's answers to interrogatories, whether Dr. Walsworth should have taken a more active role in treatment, including the possibility of suggesting referral to a burn unit as suggested by Dr. Deitelzweig, and whether his actions or failure to act constitute a breach of the standard of care. Because these are genuine issues of material fact, we reverse the grant of summary of judgment in favor of Dr. Walsworth and remand for further proceedings.

CONCLUSION
For the foregoing reasons, we affirm the summary judgment in favor of Glenwood dismissing the plaintiffs' claims, and we reverse the summary judgment in favor of Dr. Walsworth and remand for further proceedings. Costs of the appeal from the summary judgment in favor of Glenwood are assessed against plaintiffs, and costs associated with the appeal of summary judgment in favor of Dr. Walsworth are assessed against him.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

APPLICATION FOR REHEARING
Before BROWN, C.J., WILLIAMS, STEWART, KOSTELKA, and DREW, JJ.
Rehearing denied.
NOTES
[1] Glenwood's first motion for summary judgment was before Judge John L. Lolley of the Fourth Judicial District Court. Its second motion was before the late Judge Michael S. Ingram.
[2] Drs. David Barnes, J. Dean Stockstill, and Owen Meyers served on the medical review panel which addressed the claims against Glenwood and gave depositions, excerpts of which were introduced by Glenwood in support of its motion for summary judgment.
[3] La. R.S. 9:2794(A)(1) requires the plaintiff in a medical malpractice action to prove:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians... within the involved medical specialty.